## JACKSON COUNTY,
a political subdivision of
the State of Oregon,
*Respondent,*

*v.*

## Steve ROARK,
dba North Country Music, North Country
and North Country Music & Gallery,
*Appellant.*

(90-405-L-3; CA A74920)

863 P2d 491

Thad M. Guyer argued the cause for appellant. With him on the brief was T.M. Guyer & Friends, P.C.

Georgia L. Daniels, Assistant County Counsel, argued the cause and filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

**ROSSMAN, P. J.**

The issue in this case is whether a "civil penalty" proceeding, brought under Oregon's drug paraphernalia law, is more properly characterized as a "criminal" prosecution in which the government is required to prove its case beyond a reasonable doubt. We hold that it is not, and that the applicable burden in such a proceeding is proof by a preponderance of the evidence. Accordingly, we affirm.

For more than ten years, defendant has operated a retail store known as North Country. Defendant sells music, clothing, novelties and items that are frequently used in connection with illegal drugs. In the past, defendant explicitly marketed those items for use in connection with drugs. In 1989, he changed several of his store displays.

In December, 1989, the Jackson County district attorney sent defendant a letter warning him that he was not in compliance with Oregon's Drug Paraphernalia law, ORS 475.525.[1] On January 31, 1990, the district attorney obtained a "seizure order," and law enforcement officers seized certain items of defendant's inventory. Jackson County (the county) brought this action pursuant to ORS 475.565, which provides:

---

[1] ORS 475.525 provides, in part:

"(1) It is unlawful for any person to sell or deliver, possess with intent to sell or deliver[,] or manufacture with intent to sell or deliver drug paraphernalia, *knowing* that it will be used to unlawfully plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance as defined by ORS 475.005.

"(2) For the purposes of this section, 'drug paraphernalia' means all equipment, products and materials of any kind which are *marketed for use or designed for use* in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance[.]" (Emphasis supplied.)

Subsection (2) also provides a long but non-exclusive list of objects that qualify as "drug paraphernalia." The list includes items such as water pipes, roach clips, miniature cocaine spoons, bongs, scales and balances, and separation sifters for removing twigs and seeds from marijuana. Subsection (3) declares that hypodermic syringes and needles are not drug paraphernalia; subsection (4) lists evidence that should be considered in determining whether an object is drug paraphernalia; and subsection (5) denotes those persons to whom the statute does not apply.

"(1) In addition to any other penalty provided by law:

"(a) *A person who violates ORS 475.525 shall incur a civil penalty in an amount of at least $2,000 and not more than $10,000*; and

"(b) The court may order other equitable remedies including but not limited to injunctive relief.

"(2) Any fines collected under this section shall be forwarded to the State Treasurer for deposit in the General Fund to the credit of the Department of Human Resources for use by the office of Alcohol and Drug Abuse Programs. The moneys shall be used for the development and implementation of drug abuse prevention activities and adolescent treatment." (Emphasis supplied.)

Defendant filed an answer and raised several affirmative defenses, including that the action was "criminal" in nature and therefore could not be brought as a civil proceeding in which he would be denied the protections afforded in criminal prosecutions.

At trial, the county's primary witnesses were the law enforcement officers who had seized the inventory. A video tape of the seizure was admitted into evidence. After being instructed that the county had "the burden of proving by a preponderance of the evidence every claim in this case," the jury returned a verdict against defendant and assessed him a penalty of $20,000.[2] At the county's request, the court entered an amended judgment that ordered defendant to pay $10,000 and to forfeit certain items of his inventory.

■■ Defendant assigns error to the trial court's jury instruction that the county could establish a violation by a preponderance of the evidence. He contends that a judgment of liability for violating ORS 475.525 stigmatizes him as an individual who promotes the type of criminal conduct that has been targeted in the "war on drugs." He argues that that stigma, combined with the significant monetary fines that are authorized by ORS 475.565, renders the statute criminal in nature. Defendant concludes that, because he was in effect "prosecuted" under a "criminal" statute, he was entitled to

---

[2] The jury assessed a civil penalty of $10,000 for each of two separate counts of violating ORS 475.525.

various procedural protections, including the requirement that the county prove its case beyond a reasonable doubt.[3]

As pertinent to this case, ORS 475.525 renders unlawful the act of selling drug paraphernalia with the knowledge that the items will be used in connection with illegal drug use.[4] It does not prohibit either the possession of drug paraphernalia without intent to sell, or the sale of drug paraphernalia without actual knowledge that the items will be used in connection with illegal drugs. Selling or delivering drug paraphernalia is not a crime under any Oregon statute. Accordingly, a person is not "convicted" of violating ORS 475.525, but any person found to have violated that statute "shall incur a civil penalty in an amount of at least $2,000[.]" ORS 475.565(1). Both statutes are silent with respect to the degree of proof required to show a violation of ORS 475.525.

Both parties rely on *Brown v. Multnomah County*, 280 Or 95, 570 P2d 52 (1977), to reach different conclusions. In *Brown*, the Supreme Court analyzed a statute that decriminalized driving under the influence of intoxicants (DUII) when committed for the first time. The challenged statute classified the offense as a civil traffic infraction for which the penalty was a $1,000 fine and the possibility of license suspension. The question in *Brown* was whether the "ostensibly civil penalty proceeding remain[ed] a 'criminal prosecution' for constitutional purposes." 280 Or at 102. After considering several factors, the court concluded that the statute's sanction and enforcement procedures "retain[ed] too many penal characteristics not to be a 'criminal prosecution[.]' " 280 Or at 106. Accordingly, the court held that the defendant was entitled to the various procedural protections that are associated with criminal prosecutions, including the right to court-

---

[3] In the alternative, defendant argues that his interests, as compared with those of the government's, are such that he should be protected by a proof burden of at least clear and convincing evidence. However, the cases on which he relies—one involving a mental commitment proceeding and the other referring to proceedings for the termination of parental rights—are inapposite. Moreover, defendant's argument that we should "focus on the comparative interests at stake" is unpersuasive. His interest in avoiding a civil penalty for selling drug paraphernalia is not the type of "interest" that is accorded enhanced protection under the state or federal constitutions.

[4] As the Tenth Circuit Court of Appeals noted in *Murphy v. Matheson*, 742 F2d 564, 573 (10th Cir 1984), "scienter is the only practical way of defining when a multi-purpose object becomes paraphernalia."

appointed counsel, trial by jury and proof beyond a reasonable doubt.

We begin by noting that *Brown* explicitly addresses only those situations in which the legislature has "decriminalized" or "downgraded" an offense that "was once a crime." 280 Or at 102. *See also State v. Thomas*, 99 Or App 32, 35, 780 P2d 1197 (1989); *State v. Riggs*, 35 Or App 571, 576, 582 P2d 457 (1978). Although we have serious reservations about the applicability of *Brown* to statutes that impose civil penalties on conduct that has never been considered "criminal" under state law, neither party proposes that the challenged statute be analyzed under any other test. We concluded that, even under the *Brown* analysis, the assessment of a penalty under ORS 475.565 is properly denominated as civil, not criminal.

■    Under *Brown*, these factors are to be considered in deciding whether a statute is sufficiently criminal in tenor and effect to warrant the safeguards provided in a criminal prosecution: (1) The type of offense; (2) The severity of the penalty; (3) The collateral consequences associated with the penalty; (4) The stigmatizing significance of the sanction; and (5) The availability of arrest, detention and other pre-trial practices to enforce the challenged law.

*See also State v. Thomas, supra,* 99 Or App at 35. ORS 475.565 is the statute under which defendant was assessed a penalty. However, given that its applicability is predicated upon a finding that ORS 475.525 was violated, we will analyze the two statutes together.

### Type of offense

The sale of drug paraphernalia was not a crime at common law and is not a crime under Oregon's criminal code. In drafting ORS 475.525, which was modeled on the federal "Model Drug Paraphernalia Act,"[5] the 1989 Oregon Legislature declined to incorporate the criminal liability and jail sentences that are contained in the model act and created, instead, a statute that allows for the recovery of a penalty in

---

[5] The MDPA was drafted by the federal Drug Enforcement Administration (DEA). For a brief discussion of the model act, *see Gaffey v. Babb*, 50 Or App 617, 632, 624 P2d 616, *rev den* 291 Or 117 (1981).

an amount between $2,000 and $10,000. Also, the items listed in the drug paraphernalia law are not contraband *per se*. Those facts weigh in favor of a determination that the type of offense in this case is properly characterized as civil. Nonetheless, defendant argues that ORS 475.525 "targets drug activity normally connotated [*sic*] as criminal." The act of selling drug paraphernalia may well be viewed by the general public as a crime involving some form of "aiding and abetting" those who use illegal drugs. However, the perceived criminal nature of prohibited conduct does not prevent the state from responding to that conduct by regulatory, as opposed to punitive, means.

*Severity of penalty*

In *Brown*, the court noted that

"the absence of potential imprisonment does not conclusively prove a punishment non-criminal. The assessment has been made on two factors—the severity of the penalty and whether it is 'infamous.' " 280 Or at 103. (Citations omitted.)

Although a $10,000 penalty is significant, its size, alone, does not answer whether the penalty is "so strikingly severe as to carry the same punitive significance" as a term of imprisonment. The *Brown* court acknowledged that the $1,000 fine in that case was assessable only against "ordinary individuals for misconduct unrelated to the pursuit of a profitable activity," and could not be compared with the considerably larger fines that could be "levied against business enterprises for violations of various regulations in the course of business." 280 Or at 104. In contrast, the penalty in this case was assessed against defendant in his capacity as a retailer of items that were marketed or designed for use with drugs, *see* ORS 475.525(2), and the focus of the statute is on commercial activities. In a business context, even a statutorily-authorized penalty of $25,000 is not considered so great as to render a proceeding criminal in nature.[6] *State ex rel Redden v. Discount Fabrics*, 289 Or 375, 386, 615 P2d 1034 (1980).

---

[6] We note that the county's amended complaint alleges that during the three-month period covered by the complaint, defendant received over $13,000 from the sale of drug paraphernalia.

*Collateral consequences*

Under ORS 475.565(1)(b), a person who incurs a civil penalty for violating ORS 475.525 may also be subjected to "other equitable remedies including but not limited to" an injunction. Also, if the trier of fact finds that any item received into evidence is drug paraphernalia, that item is subject to forfeiture. ORS 475.545.[7] Defendant contends that the collateral consequences of inventory forfeiture are too significant to allow an action pursuant to ORS 475.565 to be characterized as a "civil" proceeding. We disagree. Although the forfeiture of inventory is no doubt a great inconvenience to defendant, he possesses no right to profit from his unlawful activities or to retain the very items that would allow subsequent violations of law.[8] Also, unlike the statute in *Brown,* a violation of ORS 475.525 does not elevate the seriousness of later violations.

*Punitive significance*

In *Brown,* the court determined that a judgment for first-offense DUII carried too much "stigmatizing or condemnatory significance," 280 Or at 106, to be considered merely a "civil" offense. As support for that conclusion, it quoted from sections of the challenged statute which declared the traffic infraction to be "punishable" by a $1,000 "penalty," asked that defendants declare whether they were "guilty" of the offense, made reference to individuals who were "convicted" of violating the statute, and provided that second and subsequent charges of DUII within five years could be punished by up to one year of imprisonment.

---

[7] ORS 475.545 provides:

"If, at the trial or upon a hearing, the trier of fact finds any item received into evidence at the trial or hearing to be drug paraphernalia, the court may order the item forfeited upon motion of the district attorney. The drug paraphernalia may then be destroyed or, if the paraphernalia is of substantial value and is not contraband, may be sold, the proceeds to be deposited in the Common School Fund."

In this case, the jury found that all of the items in evidence qualified as "drug paraphernalia."

[8] Defendant cites *State v. Curran,* 291 Or 119, 628 P2d 1198 (1981), for the proposition that the forfeiture here is criminal. However, unlike the forfeiture in that case, forfeiture under the drug paraphernalia law is not imposed for conduct defined as a crime under state law.

In contrast, ORS 475.525 and ORS 475.565 do not contain terms that are associated with criminal laws. On the other hand, given the currently high level of concern about the effects of drug abuse in our society, defendant may be correct that a jury verdict against him for selling drug paraphernalia will stigmatize him as a person who has been "intentionally promoting drug use." The judgment in this case may well carry the type of stigma that is associated with a criminal conviction involving illegal drugs.

Nonetheless, as the court clarified in *City of Springfield v. $10,000.00 In U.S. Currency*, 309 Or 272, 278 n 4, 786 P2d 723 (1990):

> "*Brown* held that the 'type of offense,' the imposition of involuntary confinement, and the size of a monetary fine were not in themselves criteria of penal as distinct from civil enforcement but were relevant to the ultimate test whether the law, the sanction, and its enforcement procedure carry punitive, 'stigmatizing or condemnatory significance' from the perspective of the lawmakers or the general public. 280 Or at 106."

In this case, those factors weigh in favor of the conclusion that the drug paraphernalia law is not punitive. Indeed, the *compensatory* aim of the law is evidenced by the fact that all penalties collected under it must be used for drug abuse prevention and adolescent treatment.

*Arrest and detention*

Oregon's drug paraphernalia law does not authorize the type of pre-trial criminal law enforcement practices that troubled the court in *Brown*. Specifically, individuals who are assessed a penalty for violating ORS 475.525 are not subject to "the possible use of physical restraints, such as handcuffs, a search of the person, booking (including the taking of fingerprints or photographs), and detention in jail if not released by police officers, or at a later time by a magistrate." 280 Or at 108. Although drug paraphernalia is subject to seizure "pursuant to a lawful order of a court," ORS 475.555(4),[9] the seizure of goods is an action that is available

---

[9] Drug paraphernalia also may be seized when it is the subject of an adverse judgment under ORS 475.525 to ORS 475.565, when it is found in the course of a constitutionally valid arrest or search, or when the owner or person in possession of the drug paraphernalia consents to its seizure. ORS 475.555(1) to (3).

in many regulatory settings and cannot be equated with the type of pre-trial practices that were discussed in *Brown*. We also note that defendant does not dispute that the drug paraphernalia in this case was lawfully seized pursuant to a constitutionally valid judicial order.

Each of these five factors is relevant, but no single factor is determinative. *Brown v. Multnomah County, supra*, 280 Or at 102. Having considered and evaluated each one, we conclude that, with regard to each of the factors, the greater weight supports a determination that a penalty proceeding under Oregon's Drug Paraphernalia Law does not possess the traits that would more properly characterize it as a criminal prosecution. Accordingly, we hold that the trial court did not err in treating this proceeding as a civil action and requiring the county to prove its case by a preponderance of the evidence.

Affirmed.