Argued and submitted October 29, 1997, reversed and remanded June 24, 1998

# STATE OF OREGON,
### *Appellant,*

*v.*

# RONALD WAYNE SELNESS,
### *Respondent.*

(C 95-02-31042; CA A89706 (Control))

# STATE OF OREGON,
### *Appellant,*

*v.*

# CYNTHIA LAVONNE MILLER,
### *Respondent.*

(C 95-02-31043; CA A89707)
(Cases Consolidated)

962 P2d 739

Katherine H. Waldo, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Peter Gartlan, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

DE MUNIZ, P. J.

---

* Deits, C. J., *vice* Rossman, S. J.

**DE MUNIZ, P. J.**

The state appeals from a pretrial order dismissing criminal charges of possession, manufacture and delivery of marijuana, ORS 475.992, on double jeopardy grounds, based on the prior civil forfeiture of defendants' home. We reverse.

On November 9, 1994, Portland police officers obtained a warrant to search the residence at 6044 S.E. Rhone in Portland. The residence belonged to defendant Selness and his domestic partner, defendant Miller. The officers' search of the residence revealed a marijuana-growing operation. On December 8, the City of Portland filed a complaint *in rem* to forfeit the property pursuant to Oregon Laws 1989, chapter 791.[1]

By 1994, defendants had been living together for 10 years and had a five-year-old daughter. They purchased the house from the Department of Housing and Urban Development in 1988, after living in a trailer and saving for two-and-one-half years. The purchase price was $31,000, and both defendants contributed to the down payment and the monthly payments of $226, which were substantial financial hardships for both. At the time of forfeiture, the balance owing on the loan was $27,000. Defendants made various improvements to the property, including landscaping, building an upstairs room and remodeling the garage. Based on comparable sales and the opinion of Selness, the value of the house at the time of forfeiture was between $87,000 and $90,000, giving defendants an equity interest in the house of between $60,000 and $63,000.

During the two-and-one-half months preceding the forfeiture, defendants had numerous conversations, both in person and by telephone, with Deputy District Attorneys Gayle Brooks and Jeffrey Ratliff. Defendants were not represented by an attorney regarding the forfeiture proceedings. Brooks told defendant Miller to file an answer and post a bond if defendants wished to contest the forfeiture. Ratliff informed Selness that defendants would be required to pay

---

[1] These provisions are now incorporated into ORS 475A.005 to ORS 475A.160. We refer to the previous citations throughout this opinion.

$15,000 to the city in a stipulated judgment to keep the house. Both informed defendants that they would have to give up certain rights, including waiving the defense of double jeopardy in any criminal case, if they agreed to the stipulated judgment. Defendants investigated the possibility of obtaining a loan to pay the $15,000 but it is unclear on this record whether they were successful. Eventually, defendants informed Ratliff that they would not enter into an agreement to redeem their house because they did not want to waive "any rights," including the defense of double jeopardy.

On February 3, 1995, defendants were indicted. On February 14, Ratliff and Brooks sent a letter to defendants advising them to file an answer or responsive pleading by February 27 or a default judgment would be sought. On February 21, Selness informed Ratliff and Brooks that they were not going to contest the civil forfeiture action. Defendants moved out of the property on February 27. On March 14, defendants were arraigned and counsel was appointed on the criminal cases. On March 17, a default judgment forfeiting the property was entered in the circuit court.

In January or February 1995, the holder of the primary mortgage, Great West, began foreclosure proceedings on the property. However, after defendants had moved out, they made a $700 payment to the bank, so that all payments were current when the property was forfeited. Miller testified that they did this to prevent foreclosure so that the state would be able to take the house.

Defendants then moved to dismiss the criminal charges on double jeopardy grounds under both the Oregon and United States Constitutions.[2] After a pretrial hearing, the trial court granted the motion, ruling that the seizure of the property occurred in a different judicial proceeding from the criminal case, that it resulted from the same acts that are the subject of the criminal case, and that it was punishment.

---

[2] Or Const, Art I, § 12; US Const, Amend V. Miller also cited the former jeopardy statute, ORS 131.515, under her points and authorities, but her argument relies solely on constitutional jurisprudence. She makes no separate argument ˪ der the statute and does not argue that ORS 131.515 affords her any greater prote ʹon than the Oregon Constitution.

■      The state assigns error to the trial court's grant of defendants' motion to dismiss on double jeopardy grounds. We review for errors of law. *State v. Charlesworth/Parks*, 151 Or App 100, 110, 951 P2d 153 (1997), *rev den* 327 Or 82 (1998). The state argues that, because defendants did not file a claim to the property in the civil forfeiture proceeding, they manifested an intent to abandon any interest in the property. Therefore, the state contends, when the default judgment was entered in the *in rem* proceeding against the property, no interest of the defendants was affected, so defendants were not punished by that proceeding. It also points out that, under Oregon law, had defendants appeared in the civil proceeding, they would have had an opportunity to present evidence in mitigation. The state claims that, because defendants waived the opportunity to present such evidence, they should not be allowed to complain that the proceeding exacted a punishment for double jeopardy purposes. The state also argues that defendants do not meet the requirements for double jeopardy under the United States Supreme Court decision in *United States v. Ursery*, 518 US 267, 116 S Ct 2135, 135 L Ed 2d 549 (1996). As they did in the trial court, defendants argue that civil forfeiture is punitive in nature, that the forfeiture of their home imposed great hardship on them, and, therefore, that the criminal charges against them were properly dismissed on double jeopardy grounds under the Oregon and federal constitutions.

■      We turn first to defendants' state constitutional claim. *State v. Charboneau*, 323 Or 38, 53, 913 P2d 308 (1996). Article I, section 12, of the Oregon Constitution, provides, in relevant part: "No person shall be put in jeopardy twice for the same offence (*sic*)." We have yet to analyze Oregon's civil forfeiture statute, Oregon Laws 1989, chapter 791, under the Oregon Constitution. *See, e.g., State v. Riggs*, 143 Or App 427, 431, 923 P2d 683 (1996), *rev den* 325 Or 247 (1997) (finding the state constitutional claim unpreserved); *Umatilla County v. $18,005 in U. S. Currency,* 142 Or App 513, 516, 921 P2d 426, *rev den* 324 Or 395 (1996) (claimant makes no argument that is separate from that made under the federal constitution); *City of Lake Oswego v. $23,232.23 in Cash*, 140 Or App 520, 527 n 7, 916 P2d 865, *rev den* 324 Or 322 (1996) (federal challenge only). However, defendants

argue that, under *State v. Curran*, 291 Or 119, 628 P2d 1198 (1981), civil forfeiture affects a "substantial right" of the interested party, *id.* at 127, and that the effect of forfeiture is criminal in nature, although the proceeding bears civil law trappings. *Id.* at 128-29. Defendants then invoke the five-factor analysis in *Brown v. Multnomah County District Court*, 280 Or 95, 102, 570 P2d 52 (1977), "to determine whether an ostensibly civil penalty proceeding remains a 'criminal prosecution' for constitutional purposes." Defendants argue:

> "The controlling issue in this case is whether the forfeiture constituted criminal punishment. If it did, then the forfeiture proceeding was a criminal proceeding and defendant could not be prosecuted and/or punished in a subsequent proceeding." (Footnote and citation omitted.)

Assuming without deciding that defendants' analysis is the proper one for double jeopardy purposes, they cannot succeed under the facts here. Defendants fail to address the fact that they chose not to participate in the civil forfeiture proceedings by not filing an answer or otherwise appearing in the civil suit. There is extensive federal and out-of-state case law with similar fact patterns, in which the defendants have attempted to base a double jeopardy claim on a civil forfeiture that they did not contest. Although the underlying theories vary in those cases, most of them hold that a defendant must state a claim in a civil forfeiture proceeding to have been placed in jeopardy for double jeopardy purposes.

Some courts hold that, if no one makes a claim to the property in a civil forfeiture proceeding, the property is then "ownerless," and, therefore, its forfeiture punishes no one. In *United States v. Arreola-Ramos*, 60 F3d 188 (5th Cir 1995), in which $11,408 in cash was forfeited and no claim was made, the court held that "albeit a legal fiction, the very issuance of a summary forfeiture establishes that no one owned the Funds. Consequently, their forfeiture punished no one." *Id.* at 192; *see also United States v. Baird*, 63 F3d 1213, 1218 (3rd Cir 1995), *cert den* 516 US 1111 (1996) (because an administrative forfeiture cannot entail a determination of ownership,

all property administratively forfeited is by definition "ownerless" and so its taking punishes no one).

Other courts rely on the fact that persons who do not make a claim to the forfeited property are not parties to the forfeiture proceeding and, therefore, cannot be punished or placed in jeopardy by that proceeding. *See Municipality of Anchorage v. Skagen*, 920 P2d 284, 287 (Alaska App 1996) (defendant not placed in jeopardy because he was never a party to the proceeding, and he was not punished because he failed to claim an interest in the vehicle); *State v. Tuipuapua*, 83 Haw 141, 925 P2d 311 (1996) (because a civil forfeiture is a proceeding *in rem*, an individual must make a claim to the property at a forfeiture proceeding to become a party to it and be subjected to jeopardy); *State v. Anderson*, 81 Wash App 636, 915 P2d 1138 (1996) (because the defendant never became a party to the forfeiture proceeding, he was not placed in jeopardy).

Some courts have been more explicit in their reasoning, asserting that a person is not placed in jeopardy unless he or she has been subjected to the hazards of trial and has been placed at risk of a determination of guilt. In *United States v. Torres*, 28 F3d 1463 (7th Cir), *cert den* 513 US 1059 (1994), the court reasoned that, because the defendant did not make a claim to the forfeited $60,000 cash and therefore did not become a party to the forfeiture, he was not at risk in the forfeiture proceeding, citing *Serfass v. United States*, 420 US 377, 391-92, 95 S Ct 1055, 1064, 43 L Ed 2d 265 (1975), for the proposition that "[w]ithout risk of a determination of guilt, jeopardy does not attach." *Torres*, 28 F3d at 1465. In *Baird*, the court stated that, even if it were to assume that the defendant was the owner of the forfeited property, administrative forfeitures do not place the owner of the forfeited property "in jeopardy." That is because "jeopardy does not attach * * * until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.' "[3] The emphasis is on protecting a person from "being subjected to

---

[3] The Ninth Circuit has stated that, in a civil forfeiture proceeding, jeopardy attaches no earlier than the date on which the defendant filed an answer to the forfeiture complaint. *United States v. Kearns*, 61 F3d 1422, 1428 (9th Cir 1995); *United States v. Barton*, 46 F3d 51, 52 (9th Cir 1995).

the hazards of trial and possible conviction more than once for an alleged offense." Because the defendant was not a party to the administrative forfeiture proceeding, he was not placed at risk of a determination of guilt, so was not placed "in jeopardy." *Baird*, 63 F3d at 1218.

Other courts have held that failure to file a claim in a civil forfeiture proceeding is an effective waiver of a subsequent double jeopardy claim. *United States v. Walsh*, 873 F Supp 334, 337 (D Ariz 1994). They hold that the time to assert a claim of ownership is in the civil forfeiture proceeding, and any attempt to do so later (such as at a double jeopardy hearing) is too late. *United States v. Cretacci*, 62 F3d 307 (9th Cir 1995), *cert den* 518 US 1007 (1996). Later claims are not allowed because "the critical time for making a claim of ownership had already passed." *Tuipuapua*, 83 Haw at 147, 925 P2d at 317, *citing Cretacci*, 62 F3d at 310.

■ Although we do not adopt the reasoning in all of these cases, we do agree with the ultimate conclusion that a defendant must make a claim in a civil forfeiture proceeding to use it as a basis for a double jeopardy claim. Our decision is based on our interpretation of Oregon Laws 1989, chapter 791. Oregon's civil forfeiture statute provides for mitigation if the court finds the forfeiture excessive.[4] The provision

---

[4] The mitigation provision of Oregon Laws 1989, chapter 791, section 13(2) states:

"A claimant who has filed a claim to seized property, appeared in the action, and part or all of whose interest in the claimed property is forfeited under the terms of the proposed judgment may file a motion for a mitigation hearing[.]"

Oregon Laws 1989, chapter 791, section 15 states:

"The court shall consider the following factors in determining whether any portion of the proposed judgment of forfeiture is excessive:

"(1) The court shall enter judgment to the extent that the defendant property is derived directly or indirectly from past prohibited conduct.

"(2) With respect to defendant property that is not derived directly or indirectly from past prohibited conduct, the court shall consider:

"(a) Whether the defendant property constituted the claimant's lawful livelihood or means of earning a living.

"(b) Whether the defendant property is the claimant's residence.

"(c) The degree of relationship between the defendant property and the prohibited conduct, including the extent to which the defendant property facilitated the prohibited conduct or could facilitate future prohibited conduct.

ensures that a civil forfeiture is commensurate with the civil intent of the statute[5] and does not rise to the level of criminal punishment. By failing to avail themselves of the opportunity to present evidence that the civil forfeiture of their home was so severe as to constitute criminal punishment, defendants have forfeited the chance to do so in this criminal proceeding. They cannot now complain that they have been criminally punished for double jeopardy purposes when they made no effort to mitigate the alleged punishment when they had the opportunity to do so. We agree with the *Walsh* court that

> "[t]o hold otherwise, would allow criminal defendants to choose their punishment. A criminal defendant could decide to forfeit material possessions in lieu of going to prison. That is certainly not the intent of Congress or recent Supreme Court decisions." *Walsh*, 873 F Supp at 337.[6]

It is not the intent of the Oregon Legislature either.

---

"(d) The monetary value of the defendant property in relation to the risk of injury to the public from the prohibited conduct.

"(e) The monetary value of the defendant property in relation to the actual injury to the public from the prohibited conduct.

"(f) The monetary value of the defendant property in relation to objective measures of the potential or actual criminal culpability of the person or persons engaging in the prohibited conduct, including:

"(A) The inherent gravity of the prohibited conduct;

"(B) The potential sentence for similar prohibited conduct under Oregon law;

"(C) The claimant's prior criminal history; and

"(D) The sentence actually imposed on the claimant.

"(g) Any additional relevant evidence."

[5] *See State v. Riggs*, 143 Or App 427, 433, 923 P2d 683 (1996), *rev den* 325 Or 247 (1997) ("[W]e conclude * * * that the legislature intended Oregon's civil forfeiture proceedings to be civil, not criminal, in nature.").

[6] See also *United States v. Bradford*, 886 F Supp 744, 749 (ED Wash 1995):

"Put simply, a defendant who elects not to contest the forfeiture of his property cannot 'have his cake and eat it too'—he cannot avoid the adjudication of his personal culpability at one stage, then suddenly assert that the forfeiture of these items has exposed him to jeopardy when such a position becomes advantageous. The Double Jeopardy Clause is not such a malleable tool to be manipulated solely to satisfy a defendant's strategic interests. Indeed, 'where a person "successfully avoid[s] such a[n] adjudication * * * [of] guilt or innocence," he has been "neither acquitted nor convicted" for purposes of double jeopardy.' *[United States v.] Kemmish*, 869 F Supp [803, 805 (SD Cal 1994)] (quoting *United States v. Scott*, 437 US 82, 99, 98 S Ct 2187, 2198, 57 L Ed 2d 65 (1978))."

The analysis under the federal constitution is the same. The Fifth Amendment to the United States Constitution provides, in part: "No person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb[.]" Under *Ursery*, for a person to be placed in double jeopardy by a civil forfeiture, it is necessary to show by the "clearest proof" that the forfeiture proceedings are "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." 518 US at 290, 116 S Ct at 2148. By not participating in the civil forfeiture proceedings, defendants have lost their opportunity to present evidence of the punitive nature of those proceedings.

Reversed and remanded.