Argued and submitted March 8, 2000, decision of Court of Appeals affirmed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings September 19, reconsideration denied December 3, 2002

STATE OF OREGON,
*Respondent on Review,*

*v.*

RONALD WAYNE SELNESS,
*Petitioner on Review.*

(CC C95-02-31042; CA A89706 (control));

STATE OF OREGON,
*Respondent on Review,*

*v.*

CYNTHIA LAVONNE MILLER,
*Petitioner on Review.*

(CC C95-02-31043; CA A89707)
(SC S46149)

54 P3d 1025

Peter Gartlan, Chief Deputy Public Defender, Salem, argued the cause for petitioners on review. With him on the brief was David E. Groom, State Public Defender.

Jennifer S. Lloyd, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

GILLETTE, J.

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

In this criminal case, we are asked to determine whether a trial court correctly dismissed indictments charging defendants with various counts of possession, manufacture, and delivery of a controlled substance. The trial court dismissed the indictments on the ground that prosecution of the charges in the indictments would violate principles against former jeopardy, because the state already had subjected defendants to jeopardy by virtue of the judicial forfeiture of their home in connection with the same offenses. On the state's appeal, the Court of Appeals reversed, holding that defendants had waived any right to base a former jeopardy claim on the forfeiture, because they had chosen not to take part in the forfeiture proceeding. *State v. Selness / Miller*, 154 Or App 579, 586-88, 962 P2d 739 (1998). We allowed defendants' petition for review and now conclude that the forfeiture proceeding to which defendants' property was subjected cannot form the basis for a successful former jeopardy defense under Article I, section 12, of the Oregon Constitution, or for a successful double jeopardy defense under the Fifth Amendment to the United States Constitution.[1]

## I. FACTS AND PROCEDURAL BACKGROUND

The following facts appear to be undisputed. On November 9, 1994, the Portland police sought and obtained a warrant to search defendants' home. In the course of the ensuing search, the police found marijuana plants, hydro pumps, lights, and other evidence of a marijuana growing operation. The police immediately seized the plants and equipment. Shortly thereafter, the City of Portland (City) filed a complaint *in rem* under Oregon Laws 1989, chapter 791,[2] seeking judicial forfeiture of the plants, equipment, and, most importantly, defendants' home.[3] The complaint

---

[1] Article I, section 12, of the Oregon Constitution, provides, in part: "No person shall be put in jeopardy twice for the same offen[s]e." Similarly, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."

[2] The provisions of Oregon Laws 1989, chapter 791, are now incorporated into ORS chapter 475A. We refer to the previous citations throughout this opinion.

[3] Oregon Laws 1989, chapter 791, provides for two forms of forfeiture: (1) nonjudicial forfeiture, which may be used to forfeit personal property, "which is not

asserted that the home and other items were subject to forfeiture either because they were the proceeds of "prohibited conduct" under the statute—that is, the manufacture, possession, and delivery of controlled substances—or because defendants had used them to facilitate such "prohibited conduct."[4]

Defendants owned the home jointly and had an equity interest in it of between $60,000 and $63,000. As persons with an interest in the property, they were entitled to file a claim in the proceeding as provided in Oregon Laws 1989, chapter 791, section 7(2)(a),[5] to plead affirmative defenses to the forfeiture under Oregon Laws 1989, chapter

---

subject to an interest in favor of any person known to have an interest, other than a person who engaged in prohibited conduct," Or Laws 1989, ch 791, § 6; and (2) judicial forfeiture, which may be used in any case in which forfeiture is sought and which *must* be used if the property to be forfeited is real property or is subject to an interest in favor of a person other than a person who engaged in prohibited conduct, Or Laws 1989, ch 791, § 7. Because the City sought to forfeit defendants' home, *i.e.*, real property, it was required to use the judicial forfeiture proceeding provided in Oregon Laws 1989, chapter 791, section 7.

[4] Oregon Laws 1989, chapter 791, section 3, provides for judicial forfeiture as follows:

"The following will be subject to civil in rem forfeiture:

"* * * * *

"(7) All real property, including any right, title and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit or facilitate in any manner the commission of *prohibited conduct*."

(Emphasis added.) "Prohibited conduct" is defined at Oregon Laws 1989, chapter 791, section 2(11), as including

"violation of, solicitation to violate, attempt to violate or conspiracy to violate any provisions of *ORS 475.005 to 475.285 and 475.805 to 475.999* when the conduct constitutes either a felony or misdemeanor as those terms are defined in ORS 161.525 and 161.545."

(Emphasis added.) ORS 475.005 to ORS 475.285 and ORS 475.805 to ORS 475.999 are statutory provisions that make possession, manufacture, and delivery of controlled substances, including marijuana, crimes.

[5] Oregon Laws 1989, chapter 791, section 7(2)(a), provides that, once an action *in rem* to forfeit property is commenced,

"[a] person claiming an interest in the property shall respond as provided in the Oregon Rules of Civil Procedure and, if a claim has not previously been filed, by filing a claim in the form set forth in section 6(3), chapter 791, Oregon Laws 1989, with the court and posting a bond with the court. The bond shall be a cash bond in an amount equal to 10 percent of the value of the interest claimed by the person in the property. * * * Failure to file an appearance, claim and bond shall constitute a default. The bond shall be returned to the claimant upon the entry of a final determination of the claim."

791, section 8,[6] and to seek mitigation under Oregon Laws 1993, chapter 699, section 13.[7] The state gave notice to defendants of the forfeiture complaint, and, on a number of occasions, various Multnomah County deputy district attorneys told defendants that they should file a claim and post a bond if they wished to contest the forfeiture. The City also offered

[6] Oregon Laws 1989, chapter 791, section 8, provides:

"(1) A claimant may plead as an affirmative defense that the claimant took the property or the interest which the claimant holds therein:

"(a)(A) Before it was seized for forfeiture:

"(B) In good faith and without intent to defeat the interest of any forfeiting agency; and

"(C) Continued to hold the property or interest without acquiescing in the prohibited conduct; or

"(b) By coownership or cotenancy taken in good faith, without intent to defeat the interest of any forfeiting agency and continued to hold the property or interest without acquiescing in the prohibited conduct.

"(2) A claimant may plead as an affirmative defense that the property was seized in violation of section 20, chapter 699, Oregon Laws 1993.

"(3) In any action brought against property subject to forfeiture under section 3(7), chapter 791, Oregon Laws 1989, a claimant may plead as an affirmative defense that the controlled substance was solely for personal use."

[7] Oregon Laws 1993, chapter 699, section 13, provides, in part:

"(2) A claimant who has filed a claim to seized property, appeared in the action, and part or all of whose interest in the claimed property is forfeited under the terms of the proposed judgment may file a motion for a mitigation hearing.

"* * * * *

"(3) If a motion for a mitigation hearing is filed, the court shall determine whether any portion of the proposed judgment is excessive in the manner provided by section 15 of this 1993 Act.

"* * * * *

"(5) The court may make such orders, as may be necessary to insure that the forfeiture is not excessive."

Section 15 of Oregon Laws 1993, chapter 699, referred to above, provides that the court will consider various factors in determining whether the proposed forfeiture judgment is excessive, including "the extent that the defendant property is derived directly or indirectly from past prohibited conduct," "whether the defendant property constitutes the claimant's lawful livelihood or means of earning a living," "whether the defendant property is claimant's residence," "the degree of relationship between the defendant property and the prohibited conduct," "the monetary value of the defendant property in relation to the risk of injury to the public from the prohibited conduct," "the monetary value of the defendant property in relation to the actual injury to the public from the prohibited conduct," and "the monetary value of the defendant property in relation to objective measures of the potential or actual criminal culpability of the person or persons engaging in the prohibited conduct."

to enter into a stipulated judgment under which defendants would agree to pay the City $15,000 and to waive any claim or defense arising out of the seizure of the home in consideration for the City releasing any right or claim to the home. Defendants ultimately declined the stipulated judgment offer because they did not want to waive any rights or claims, including the right to raise a former jeopardy defense.

Defendants did not file a claim or otherwise appear in the forfeiture proceeding. In February 1995, when Multnomah County prosecutors informed defendants that they would be seeking a default, defendants responded that they would not contest the forfeiture. Defendants moved out of the home in late February, and a default judgment was entered on March 17, 1995.

In the meantime, the state had charged defendants with multiple counts of possessing, manufacturing, and delivering a controlled substance, ORS 475.992, based on the November 9, 1994, search. The court arraigned defendants on those charges on March 14, 1995—three days before the court entered default judgment in the forfeiture proceeding. At their arraignment, the court assigned defendants court-appointed counsel to defend them in the criminal proceedings.[8]

After the court forfeited their home, defendants moved to dismiss the criminal charges on the ground that prosecution of those charges would violate the prohibitions against former and double jeopardy in the state and federal constitutions. After a hearing on the matter, the trial court granted the motion and dismissed the charges. In its written dismissal order, the trial court determined that the forfeiture had occurred in a different judicial proceeding and that it had resulted from the same acts that were the subject of the criminal charges. From those facts, the trial court ruled that the forfeiture was "punishment" and that further criminal prosecution or punishment respecting the same acts would

---

[8] Defendants were not represented by an attorney at any time in the forfeiture proceeding.

amount to former jeopardy. The court also held that defendants had not waived their right to raise a former jeopardy defense by failing to appear in the forfeiture action.

As noted, the state appealed the trial court order, and the Court of Appeals reversed. With respect to defendants' state constitutional claim, the Court of Appeals held that defendants had waived any right to base a former jeopardy claim on the forfeiture proceeding by failing to file an answer or otherwise to appear in that proceeding:

> "Our decision is based on our interpretation of Oregon Laws 1989, chapter 791. Oregon's civil forfeiture statute provides for mitigation if the court finds the forfeiture excessive. The provision ensures that a civil forfeiture is commensurate with the civil intent of the statute and does not rise to the level of criminal punishment. By failing to avail themselves of the opportunity to present evidence that the civil forfeiture of their home was so severe as to constitute criminal punishment, defendants have forfeited the chance to do so in this criminal proceeding. They cannot now complain that they have been criminally punished for double jeopardy purposes when they made no effort to mitigate the alleged punishment when they had the opportunity to do so."

*Selness/Miller*, 154 Or App at 586-87 (footnotes deleted). Having concluded that defendants had waived their right to assert a former jeopardy claim under Article I, section 12, the Court of Appeals never reached the substantive question posed by the state's appeal, *viz.*, whether forfeiture of property under Oregon Laws 1989, chapter 791, is or can be "jeopardy" for purposes of a former jeopardy claim under the Oregon Constitution. The court employed a similar rationale with respect to defendants' federal double jeopardy claim. *Id.* at 588. The court reversed the trial court's judgment. We allowed defendants' petition for review.

Defendants argue to this court that prosecution under the indictments is barred by the jeopardy provisions in both the state and federal constitutions, and that they have not waived or forfeited the right to raise a claim under those provisions. We first consider defendants' arguments with respect to the Oregon Constitution. *See State v. Kennedy*, 295

Or 260, 262, 666 P2d 1316 (1983) (stating that state constitutional questions will be addressed before federal constitutional questions).

## II. FORMER JEOPARDY UNDER ARTICLE I, SECTION 12

### A. *Waiver*

As noted, the Court of Appeals concluded that defendants waived any former jeopardy claim that they otherwise might have had under the Oregon Constitution by failing to appear in the underlying forfeiture proceeding. *Selness/Miller*, 154 Or App at 584-87. Defendants acknowledge that similar reasoning has led courts in other jurisdictions to refuse to entertain any former jeopardy claim that is based on civil forfeiture proceedings in which the claimant did not appear. *See, e.g., United States v. Torres*, 28 F3d 1463 (7th Cir), *cert den* 513 US 1059 (1994) (owner who does not file claim in forfeiture proceeding cannot base double jeopardy claim on that proceeding); *United States v. Cretacci*, 62 F3d 307 (9th Cir), *cert den* 518 US 1007 (1995) (same). They argue, however, that those decisions are unpersuasive and should not be followed. Defendants also argue that those decisions are inconsistent with the Oregon former jeopardy provision because they are based on a legal fiction that is not accepted in this state, *viz.*, the theory that *in rem* forfeiture proceedings do not affect *personal* rights.

We note, first, that, in holding that defendants had waived their right to assert a jeopardy defense, the Court of Appeals never aligned itself expressly with any of the cases from other jurisdictions that it discussed in its opinion. Rather, that court set out its own theory of implied waiver—that a homeowner who fails to take advantage of the mitigation procedure provided by the forfeiture statute cannot later complain that the forfeiture that the homeowner suffered was so excessive as to amount to criminal punishment. *Selness/Miller*, 154 Or App at 586-87.

We agree with the Court of Appeals' waiver analysis, as far as it goes: In our view, defendants have waived their right to argue that, *as applied to them*, the forfeiture scheme at issue is punitive and counts as "jeopardy" for purposes of

Article I, section 12, of the Oregon Constitution. However, that conclusion does not speak to defendants' principal argument, *viz.*, that the overall forfeiture scheme in Oregon Laws 1989, chapter 791, and not just its particular effect in defendants' case, is criminal in nature and effect. The question remains whether defendants' failure to appear waived that argument as well as their as-applied challenge.

To answer that question, we turn to the other theories of waiver mentioned, but not expressly approved, in the Court of Appeals' opinion: (1) that, if no one makes a claim to property in a civil forfeiture proceeding, then that property is ownerless and its forfeiture punishes no one; (2) that an owner who chooses not to become a party to a forfeiture proceeding cannot argue that he or she has been subjected to the hazards of trial and a determination of guilt that are the earmarks of jeopardy; and (3) that the proper time for making a claim of ownership is in the forfeiture proceeding, and the court will not hear a person who has failed to make a claim of ownership at that time to make that claim in a later criminal proceeding for the purpose of asserting former jeopardy. *See Selness/Miller*, 154 Or App at 584-86 (summarizing theories). All three theories appear to proceed on the premise that a property owner can overcome the civil, *in rem* label that attaches to forfeiture proceedings, but only if the property owner takes the formal step of appearing and contesting the forfeiture.

We agree with defendants that all those theories place undue importance on a property owner's decision to appear formally in a forfeiture proceeding. To the extent that they rely on a presumption that nonappearing property owners actually have abandoned their property and, therefore, are not affected by the proceeding or the forfeiture, they are not persuasive. Property owners may have many reasons, other than lack of interest, for failing to file a claim in a forfeiture proceeding, including a realistic appraisal of their chances of obtaining a successful outcome and a legitimate desire to avoid self-incrimination.

If, on the other hand, the state's waiver theories rely only on the legal fiction that no ownership interest exists in the absence of a claim, then they are equally unpersuasive.

This court never has treated property in *in rem* proceedings in a manner that ignored the existence or interests of property owners. *See, e.g., State v. 1920 Studebaker Touring Car et al.*, 120 Or 254, 269, 251 P 701 (1927) (automobiles may become subject to *in rem* forfeiture if used for unlawful purpose, but proceeding must be one in which party who is to be deprived of property is accorded all his constitutional rights).

■ Realistically, a property owner's decision to file a claim in a forfeiture proceeding under Oregon Laws 1989, chapter 791, has no effect on the essential character of that proceeding. Although it is true that a property owner who files a claim may seek mitigation after a forfeiture is authorized, Or Laws 1993, ch 699, § 13, the *proceeding* will be the same, whether or not the property owner appears. Because the proceeding is whatever it is—civil or criminal—the notion that the validity of an assertion of former jeopardy should depend on the filing of a claim would be an unjustified elevation of form over substance. We agree with defendants, therefore, insofar as they argue that a property owner's failure to appear in a forfeiture proceeding is irrelevant to the property owner's right to assert a claim that the proceeding on its face constitutes former jeopardy under Article I, section 12, of the Oregon Constitution. If a forfeiture proceeding under Oregon Laws 1989, chapter 791, puts the affected property owner in jeopardy in the constitutional sense (and that is a question that we have yet to decide), then the owner may assert a later former jeopardy claim, regardless of the owner's formal participation in the proceeding.[9]

B. *"Jeopardy" under Article I, Section 12*

We turn to the substantive issue: Does a forfeiture proceeding under Oregon Laws 1989, chapter 791, always put an affected property owner in "jeopardy" within the meaning of Article I, section 12, so that the fact that the proceeding occurred precludes any later attempt to prosecute the property owner criminally for the "prohibited conduct"

---

[9] As discussed above, however, owners who fail to take advantage of mitigation procedures provided in a forfeiture proceeding (as defendants did in this case) are barred from arguing, on the basis of the outcome and effects of the forfeiture in their particular case, that the proceeding is jeopardy for purposes of Article I, section 12.

alleged in the forfeiture proceeding? Defendants argue that it does, because jeopardy arises out of any proceeding that is "criminal in nature" and because the forfeiture proceeding provided by Oregon Laws 1989, chapter 791, is, in their view, such a proceeding. The state acknowledges that jeopardy arises when a person might be punished in a criminal proceeding, but argues that forfeiture, as a proceeding and a sanction, is civil and has been since before the adoption of Article I, section 12.

In evaluating those arguments, our task is to ascertain the intent of the individuals who drafted and adopted Article I, section 12. We consider the provision on three levels: its specific wording, the case law surrounding it, and the historical circumstances that led to its creation. *See Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (describing that method for analyzing original constitutional provisions).

The meaning of the term "jeopardy" in Article I, section 12, does not advance the inquiry much. In common parlance, "jeopardy" means "danger" or "risk." By itself, the term "jeopardy" conveys little about what sort of dangers or risks to which the constitutional provision speaks. The question remains: In "jeopardy" of what?

The text of Article I, section 12, speaks of "jeopardy * * * for the same offen[s]e." Although the term "offense" can pertain to a broad range of actions, including moral and religious breaches and private, civil transgressions, those are not matters that usually are a concern of the law and, even less, of constitutions. Respecting the law and constitutions, the term most often is used to refer to *criminal* violations. *Black's Law Dictionary*, for example, defines "offense" as:

> "A felony or misdemeanor; a breach of the criminal laws; violation of law for which penalty is prescribed. The word 'offense,' while sometimes used in various senses, generally implies a felony or a misdemeanor infringing public as distinguished from mere private rights, and punishable under the criminal laws, though it may also include the violation of a criminal statute for which the remedy is merely a civil suit to recover the penalty."

*Black's Law Dictionary*, 1081 (6th ed 1990). Thus, it is most likely that the term "offense" in Article I, section 12, is "about" criminal law and criminal proceedings.

Historically, Article I, section 12, was borrowed from a similar provision in the Indiana Constitution of 1851, and that the Oregon Constitutional Convention adopted it without any recorded discussion. Charles Henry Carey, *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857*, 468 (1926). There are relatively few Indiana cases that pertain to Indiana's 1851 former jeopardy provision that antedate Oregon's adoption of Article I, section 12. Although those cases generally are consistent with the notion that former jeopardy pertains only to criminal law and proceedings, none of them directly addresses the point. *See, e.g.*, *Wright v. The State*, 5 Ind 527 (1854) (retrial of criminal homicide case after jury found defendant guilty of assault and battery); *Miller v. State*, 8 Ind 325 (1856) (state could not retry criminal grand larceny case when discharge of first jury was not necessary).

In one pre-1857 Indiana case, *Taber v. Hutson*, 5 Ind 322 (1854), the Indiana Supreme Court used the "principle" embodied in Indiana's former jeopardy clause to find that punitive damage awards are not permissible in civil tort actions when the underlying offense also subjects the offender to criminal prosecution. The court acknowledged, however, that the Indiana former jeopardy provision *itself* was not directly applicable to "remedies secured by civil proceedings." *Id.* at 325. Within a few years of *Taber* (albeit after Oregon's adoption of Indiana's former jeopardy wording), the Indiana court indicated, even more decisively, that its former jeopardy provision would not apply to a proceeding that was "not a prosecution for a crime or offense committed." *Zehner v. Vankirk*, 27 Ind 121, 122 (1866).

Beyond its Indiana roots, the historical circumstances in which Article I, section 12, was adopted also suggest, in a general way, that the former jeopardy concept pertains to criminal proceedings. Of course, at the relevant time (*i.e.*, before 1857), most of the commentary focused on the

common-law notion of double jeopardy or on the federal double jeopardy clause. However, it is clear that such commentary assumes that "jeopardy" arises in the context of a criminal prosecution. *See, e.g.*, Joseph Chitty, *A Practical Treatise on the Criminal Law*, 452 (1847 ed) (discussing double jeopardy principle as presenting "an insurmountable barrier to a second prosecution"). Similarly, virtually all the United States Supreme Court's double jeopardy cases prior to 1857 involved a second *criminal* prosecution. *See, e.g., United States v. Perez*, 9 Wheat 579, 6 L Ed 165 (1824) (no double jeopardy violation if criminal defendant is retried after jury fails to agree on verdict); *United States v. Randenbush*, 33 US 288, 8 L Ed 948 (1834) (no double jeopardy problem when defendant criminally indicted for *different* offense after acquittal).

Finally, we consider the case law surrounding Article I, section 12. In general, this court's case law confirms what the wording and history of Article I, section 12, indicate, *viz.*, that "jeopardy" arises only in the context of criminal proceedings. *See, e.g., State v. Welch*, 264 Or 388, 505 P2d 910 (1973) (involving criminal prosecution on two separate counts of publishing false checks); *State v. Brown*, 262 Or 442, 497 P2d 1191 (1972) (involving separate criminal prosecutions for misdemeanor of carrying a concealed weapon and being convict in possession of a firearm, a felony); *City of Portland v. Erickson*, 39 Or 1, 6-7, 62 P 753 (1900) (stating that jeopardy provision in Article I, section 12, applies to proceedings carried out in same manner as criminal cases are prosecuted).

However, a few of this court's cases add an additional wrinkle to the former jeopardy analysis: They suggest that any inquiry under Article I, section 12, looks behind a proceeding's civil label and considers the substance of the proceeding. The earliest, and most significant, of those cases is *Erickson*. In *Erickson*, this court considered whether it would violate Article I, section 12, if a defendant's acquittal of a city ordinance violation were reversed and the defendant were required to face a retrial. Nominally, the violation was a civil matter, and the city argued that the former jeopardy concept was inapplicable. 39 Or at 2-5.

The *Erickson* court disagreed. In analyzing the problem, the court began with the assumption that "jeopardy" refers to only *criminal* prosecutions. It then announced that the constitutional notion of jeopardy may apply to proceedings that, although civil in name or form, are criminal "in nature":

> "[W]here, under the statute and ordinances, enforcement is sought by resort to proceedings authorized and carried on in all respects as criminal cases are prosecuted—by complaint and warrant—and where the court is empowered to inflict upon the accused not only a fine, which may be followed by imprisonment for its nonpayment, but also imprisonment aside from any pecuniary penalty or forfeiture, such proceeding becomes so far criminal in its nature, and the violation of the ordinance such an offense, that a person acquitted thereof can not be again put in jeopardy for the same offense."

39 Or at 7. Thus, *Erickson* instructs us that, even if a proceeding bears a "civil" label, it may place a person "in jeopardy" for purposes of Article I, section 12, if it is criminal "in its nature."

What determines whether a proceeding is, in fact, criminal "in its nature," so that the former jeopardy prohibition in Article I, section 12, is triggered? *Erickson* is instructive. First, it is notable that, in deciding that case, the *Erickson* court did not set aside the "civil" designation as irrelevant. Rather, it found that, because certain aspects of the ordinance were incompatible with that designation, the proceeding became "*so far* criminal in its nature" that it amounted to jeopardy. 39 Or at 7 (emphasis added). *Erickson* suggests, in other words, that a "civil" designation (*i.e.,* a clear indication that the legislating body intends to create a civil proceeding) is relevant, but may be overcome if application of substantive constitutional standards demonstrate that that designation is incorrect (*i.e.,* the proceeding is in substance "[too] far criminal in its nature" to be deemed civil for former jeopardy purposes).

*Erickson* informs our present inquiry in another way. The *Erickson* court concluded that the proceeding that it was examining was criminal "in its nature" because it

included certain pretrial procedures (information and warrant) and a potential penalty (incarceration) that were associated exclusively with criminal proceedings. *Erickson* thus suggests that the use of traditional criminal pretrial procedures, coupled with the potential for incarceration, may mark an otherwise civil proceeding as criminal in nature, at least for purposes of Article I, section 12.

Another Article I, section 12, case, *State v. Morrow*, 158 Or 412, 75 P2d 737 (1938), confirms that the potential penalty associated with a proceeding is of paramount importance in determining whether the proceeding is "criminal in its nature." In that case, the court held that jeopardy within the meaning of Article I, section 12, cannot arise out of a filiation proceeding because such proceedings do not involve any potential penalty:

> "Jeopardy has application to proceedings which subject the guilty to the imposition of a penalty. Some courts include within the category of penal proceedings only criminal actions wherein a fine may be imposed or the defendant may be sentenced to confinement in a penal institution, while other courts include within the category civil proceedings in which punitive damages are sought. * * * A filiation proceeding, being civil in nature and authorizing the imposition of no penalty, cannot place a defendant in jeopardy of life or liberty."

*Id.* at 416-17 (citations omitted). *Morrow* is unspecific about the kinds of penalties that mark a civil proceeding as criminal in nature, but leaves open the possibility that penalties other than imprisonment might qualify. Thus, *Erickson* and *Morrow*, both decided under Article I, section 12, suggest that, for purposes of determining whether a proceeding qualifies as "jeopardy," criminal proceedings can be identified as such by the fact that they expose persons who are subject to them to procedures and penalties that are peculiarly associated with the criminal law.

At this point, we briefly summarize our examination of the wording, history, and case law surrounding the former jeopardy clause of Article I, section 12. First, we have determined that, for purposes of Article I, section 12, "jeopardy"

arises only in *criminal* proceedings. Second, we have determined that, although a proceeding may be designated as "civil" by the legislature, that designation may be overcome by a showing that the proceeding is "so far criminal in its nature" that it amounts to a criminal proceeding. Finally, we have observed that a nominally civil proceeding may be shown to be criminal "in its nature" by the fact that it employs certain procedures (*e.g.*, "complaint and warrant") and may result in certain penalties, including imprisonment.

Defendant recommends another case, *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977), as setting out the proper methodology for determining whether a proceeding is criminal "in its nature" (and, thus, "jeopardy," for purposes of Article I, section 12). Because that case was not decided under Article I, section 12, and does not purport to construe that provision, it is not strictly within the scope of the analysis set out in *Priest v. Pierce*. We are persuaded, however, that the general discussion in *Brown* is relevant to our present analysis and that *Brown* should be examined at this juncture. Still, in considering *Brown*, we remain mindful that certain parts of the discussion might not translate perfectly into the former jeopardy context.

*Brown* came to this court as a challenge to a first-time conviction on a charge of driving under the influence of intoxicants (DUII). On review, the defendant argued that the trial court had committed reversible error by denying his motion for an order granting him court-appointed counsel, a jury trial, and prosecution under a "beyond a reasonable doubt" standard of proof—all rights that traditionally are guaranteed in criminal, but not civil, proceedings. The defendant acknowledged that the legislature had purported to recategorize first-offense DUII from a criminal to a civil offense. He argued, however, that the first-time DUII offense retained sufficient characteristics of a criminal charge to require compliance with the constitutional guarantees applicable in criminal prosecutions. *Id.* at 97.

In considering that challenge, the court in *Brown* began by identifying the sources of the rights at issue, finding that two—the right to counsel and to a jury trial—were guaranteed by Article I, section 11, of the Oregon Constitution,

while the other—the right to be prosecuted under the criminal "beyond a reasonable doubt" standard—derived from the federal due process requirement of the Fourteenth Amendment. After declaring that those rights apply to all proceedings that have the "character" of criminal prosecutions, *id.* at 98-99, the court identified five "indicia" as relevant in assessing whether an ostensibly civil proceeding in fact is a criminal prosecution for constitutional purposes: (1) the type of offense and, specifically, whether the offense historically has been viewed as a crime or involves traditional common-law elements of crime, *e.g.*, *mens rea*; (2) the severity and "significance" of the penalty; (3) the significance of any collateral consequences that attach to the proceeding; (4) the punitive or "stigmatizing" significance of the judgment or penalty; and (5) the fact that traditional criminal pretrial procedures, such as arrest and detention, are used with respect to the offense. *Id.* at 102-08. After considering those indicia, the *Brown* court concluded that the offense at issue—first-offense DUII—retained "too many penal characteristics" not to be a criminal prosecution for purposes of Article I, section 11, and that, consequently, the defendant was entitled to the order that he sought. *Id.* at 109-11.

*Brown*'s discussion of the indicia of a criminal proceeding is relevant in the present Article I, section 12, context, because it is immediately apparent, from an examination of the indicia identified in *Brown*, that several of those factors closely parallel factors that *Erickson* and other Article I, section 12, cases have identified as significant. For example, *Brown* asserts that the use of arrest and detention and similar practices associated with the enforcement of criminal laws (including the use of physical restraints, search of the person, booking, fingerprinting, etc.) are strongly indicative of a criminal proceeding. That assertion echos *Erickson's* focus on enforcement by "proceedings authorized and carried on in all respects as criminal cases are prosecuted." *See Erickson*, 39 Or at 7 (referring to enforcement of city ordinance by complaint and warrant).

*Brown*'s identification of the "penalty" as a relevant indicator also is consistent with this court's Article I, section 12, cases. *Brown* describes the prescribed penalty as the "single most important criterion" for distinguishing criminal

from civil proceedings, particularly when a potential penalty is imprisonment. 280 Or at 103. *Erickson* and *Morrow* also hold that the penalty is a crucial consideration.

*Brown,* however, is more expansive about the significance of the prescribed penalty than either *Erickson* or *Morrow. Brown* suggests that penalties must be assessed in terms of severity and of whether the penalty is "infamous." 280 Or at 103. In addition, *Brown* indicates that some penalties—fines, for example—might be either civil or criminal, depending on the circumstances. It suggests that the correct categorization of a monetary penalty may vary depending on whether it is excessive in relation to the civil purpose that it purports to serve.[10]

*Brown* also offers, as a separate indicium of a criminal proceeding, what it terms the "punitive significance" of the judgment. *Id.* at 105. While that factor could be interpreted as another allusion to the "infamous" nature of certain penalties, *e.g.,* imprisonment, the *Brown* court was referring to a broader concern, *i.e.,* "whether a judgment carries stigmatizing or condemnatory significance." *Id.* at 106. Although the court acknowledged the difficulties inherent in weighing that consideration, it nevertheless included the consideration in its test, and ultimately relied heavily on that factor to conclude that first-time DUII under ORS 484.365 (1975) was a criminal offense for constitutional purposes.

■    Insofar as *Brown* holds that the severity and the "infamous" nature of the prescribed penalty is an important consideration in distinguishing criminal from civil proceedings, we think that it is a reasonable extension of this court's Article I, section 12, jurisprudence. We agree with the *Brown* court that heavy fines, for example, must be justified in terms of their supposed civil purpose and that, if they are not, they

---

[10] Thus, the *Brown* court wrote, with regard to the $1,000 fine that was the penalty for a first-time DUII conviction:

"It proves little about a $1,000 fine for driving under the influence of intoxicants that much larger civil penalties are levied against business enterprises for violations of various regulations in the course of business. We deal here with fines payable by ordinary individuals for misconduct unrelated to the pursuit of a profitable activity."

280 Or at 104 (footnote omitted).

may be deemed to be criminal punishment. Neither do we reject the possibility that, on some occasions, the stigma associated with a penalty or judgment might mark a proceeding as criminal for purposes of Article I, section 12. We emphasize, however, that that factor requires a showing of a stigma on the individual and not just a showing of some vague public disapproval of the behavior in question.

This court recently addressed an analogous problem in *State v. MacNab*, 334 Or 469, 51 P3d 1249 (2002). In that criminal case, the defendant, a convicted sex offender, argued that requiring him to register as a sex offender under a sexual offender registration act was a "further punishment" for his original offense and, as such, was forbidden by the *ex post facto* prohibitions of the Oregon and federal constitutions.[11] The act had been passed after the defendant was convicted of the underlying crime. As in the present case, the defendant in *MacNab* relied, in part, on the *Brown* decision.

In *MacNab*, this court considered the same reference in *Brown* to the "punitive significance" of a statutory procedure. The court there recognized, as we do again today, that the purpose of the criminal law as stated in *Brown*, *viz.*, to provide " 'retribution and deterrence,' * * * meaning deterrence both of the individual defendant and of persons in his situation generally," 280 Or at 105, did not much advance the discussion. Instead, the court inquired more deeply into the meaning of the concept of "punishment" as it related to the purposes for which Oregon's *ex post facto* provision was established. The court concluded that, for purposes of *ex post facto* analysis, the question was "whether those punitive attributes (detriment, restraint, or deprivation intended to deter the offender and others) are present to such a degree that the application to the defendant violates Article I, section 21, of the Oregon Constitution." *MacNab*, 334 Or at 479. In that case, the court concluded that "requiring defendant to register as a sex offender does not impose any significant detriment, restraint, or deprivation on defendant and, therefore,

---

[11] Article I, section 21, of the Oregon Constitution, provides, in part: "No *ex post facto* law * * * shall ever be passed * * *." Article I, section 10, of the United States Constitution, provides, in part: "No state shall * * * pass any * * * ex post facto Law[.]"

is not a form of increased 'punishment' prohibited by Article I, section 21, of the Oregon Constitution." *Id.* at 481.

■ The analysis under Article I, section 21, in *MacNab* was, in our view, consistent with the test that we here announce under Article I, section 12. So long as a particular forfeiture is justifiable in terms of its civil purpose, the incidental detriment, restraint, or deprivation that it may impose will not rise to the level of a "criminal" punishment.

*Brown* also states that the "type of offense" is an indicator of the true nature of a proceeding. That is, the factor focuses on the nature of the alleged illegal act itself. That factor most directly relates to the distinction between Article I, section 11, and Article I, section 12. Article I, section 11, focuses directly on the rights of persons "[i]n all criminal prosecutions," *i.e.*, their rights in a proceeding to impose a criminal punishment. The focus under Article I, section 12, has been somewhat different, centering on the practical effect of the *outcome* of a proceeding on the persons who are subjected to it, *i.e.*, on the consequences such persons might be forced to endure. *See, e.g., Erickson*, 39 Or at 7 (focusing on statute's provision for imprisonment and on use of complaint and warrant). We think that it follows that the *Brown* "type of offense" does not add anything to the standard already enunciated in *Erickson*. We therefore do not include that *Brown* factor in our analysis under Article I, section 12.

*Brown* identifies one more factor—"collateral consequences"—as an indicator that a proceeding is criminal in nature. By the term "collateral consequences," *Brown* appears to refer to additional burdens and losses that flow automatically from a judgment in a proceeding and that amount to "another form of punishment." 280 Or at 105. Although collateral consequences are not mentioned in this court's Article I, section 12, jurisprudence, we think it obvious that, if a law operates to impose burdens or penalties as additional consequences of a judgment in a proceeding, those burdens may be relevant to determining whether the proceeding is criminal in nature. Thus, the *Brown* "collateral consequences" factor also is compatible with this court's Article I, section 12, jurisprudence.

Having examined the five factors identified in *Brown* as they relate to this court's own Article I, section 12, jurisprudence, we conclude that four are useful in the Article I, section 12, context: (1) the use of pretrial procedures that are associated with the criminal law, such as indictment, arrest, and detention; (2) the potential for imposition of a penalty that is historically criminal or "infamous," or that cannot be justified fully in terms of the civil purposes that the penalty supposedly serves; and (3) the potential for a judgment or penalty that carries public stigma; (4) the potential for collateral consequences that, either taken by themselves or added to the direct consequences of the underlying forbidden acts, amount to criminal penalties. For the reasons set out above, the remaining *Brown* factor—the type of offense—adds nothing new in the former jeopardy context.

■■  We conclude that the proper test for determining whether an ostensibly civil proceeding is criminal in nature and amounts to "jeopardy" is as follows. First, we determine whether the legislature intended to create a civil proceeding. If we conclude that the legislature did so intend, then we apply the factors that we have identified as possible indicators of a criminal proceeding and, in particular, the four *Brown* factors that we have emphasized.

C.  *Application to Oregon Laws 1989, Chapter 791.*

■  Applying that test to the case before us, we begin by examining the label attached to forfeiture under Oregon Laws 1989, chapter 791. There is no question that the legislature intended to, and did, categorize that proceeding as civil. The statute repeatedly refers to *civil* forfeiture. The findings clearly express a civil intent. *See* Or Laws 1989, ch 791, § 1(5) ("[t]he application of any remedy under this Act is intended to be remedial and not punitive"). Other findings and provisions suggest, and are consistent with, remedial purposes: (1) to render the sale and manufacture of illegal drugs unprofitable by confiscating the proceeds of those activities; (2) to make those activities more difficult by confiscating the tools and property that have made those activities possible; and (3) to reimburse governments for their costs in enforcing drug laws. *See* Or Laws 1989, ch 791, § 1(a) and (c) (setting out findings that prohibited conduct is profitable and

that conduct is facilitating acquisition and possession of property subject to forfeiture under chapter); Or Laws 1989, ch 791, § 3 (setting out types of property subject to forfeiture, *i.e.*, controlled substances themselves, raw materials, containers, conveyances, money and things of value that are proceeds of prohibited conduct, and real property used to commit or facilitate prohibited conduct). Still other provisions suggest an intent to avoid punitive effects. *See* Or Laws 1993, ch 699, §§ 13-15 (providing for mitigation to prevent excessive forfeiture and providing that court shall consider, in determining if forfeiture is excessive, degree of relationship between forfeited property and prohibited conduct, whether forfeited property constitutes claimant's lawful livelihood or residence, etc.).

Having established that the legislature intended to create a civil proceeding and remedy when it enacted the statutes at issue, we next examine the proceeding in light of the four factors that we have identified as relevant.

1. *Pre-Trial Procedures (indictment, arrest, detention, etc.)*

■ Oregon Laws 1989, chapter 791, does not provide for the arrest and detention of property owners, or for any other procedure with similar criminal consequences for the property owners.

2. *Nature of Potential Penalty*

The state argues that, historically, the law has viewed *in rem* forfeiture as a civil, rather than a criminal, action. We agree that there is strong support for that view, although the evidence is not entirely one way. *See, e.g., Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 US 663, 681-90, 40 L Ed 2d 452, 466-71, 94 S Ct 2080 (1974) (tracing federal view that *in rem* forfeitures, as opposed to *deodand* forfeitures, only pertain to property and treat guilt or innocence of the property owner as irrelevant); *but compare Boyd v. United States*, 116 US 616, 633-35, 29 L Ed 746, 752, 6 S Ct 524 (1886) (holding that proceeding to forfeit of fraudulently imported goods was quasicriminal and therefore sufficient to implicate prohibition on compulsory self-incrimination). Even if the evidence regarding the historical view of *in rem* forfeiture is not *entirely* unequivocal, it is clear that forfeiture

is not an "infamous" penalty, the potential for which, like imprisonment, automatically marks a proceeding as criminal in nature.

Neither does it appear that there are any grounds for claiming that forfeiture under Oregon Laws 1989, chapter 791, is inconsistent with, or excessive in relation to, the statute's civil purpose. We already have noted that the forfeiture statute announces several remedial purposes, *e.g.*, to render drug manufacture and trafficking activities unprofitable by confiscating the proceeds, to render those activities more difficult by confiscating tools and other property that facilitate the activities, and to provide resources to governments that enforce drug trafficking laws.

Defendants do not deny that those purposes exist, but argue that the forfeiture scheme is unrelated to those purposes. They contend that the forfeiture of their home was personally "staggering" and that it is impossible to justify their $60,000 loss as necessary to cover the state's investigative and prosecutorial costs or in terms of some other nonpunitive purpose.

That is the point at which defendants' procedural choices during the forfeiture proceeding become relevant. As we have shown, the statutory scheme on its face expresses a legislative intent to keep its sanctions within constitutional bounds and provides a "mitigation" mechanism that purports to serve that intent. To the extent that defendants' argument focuses on any alleged excessiveness of their own $60,000 loss, it is an "as applied" argument and foreclosed by their failure to intervene in the forfeiture proceeding and seek mitigation. We cannot presume that, if defendants had made the kind of showing in mitigation that they statutorily were entitled to make, the final outcome would have been disproportionate.

To the extent that defendants are suggesting that the entire statutory *scheme* is excessive—and that is their burden—we are not persuaded. Depending on the circumstances, forfeiture of an entire house or any other property that is a subject of Oregon Laws 1989, chapter 791, may be justified fully in terms of the remedial purposes of removing the tools of a drug manufacturer's or trafficker's trade and of

confiscating profits. Moreover, the clear purpose and effect of the mitigation procedure set out at Oregon Laws 1993, chapter 699, section 13, is to ensure that forfeitures are not excessive in relation to those purposes. Although defendants in this case did not avail themselves of that procedure, its availability precludes any claim that the statute on its face provides for sanctions that cannot be justified in terms of civil purposes.

### 3. *Stigmatizing Effect*

Defendants also argue that the stigma associated with forfeiture under Oregon Laws 1989, chapter 791, marks the proceeding as criminal. Defendants argue that persons who lose their home in a drug-related forfeiture "bear as much public condemnation, if not more, as persons convicted of such crimes as DUII, reckless endangering or felony driving while suspended."

Defendants' comparison to DUII and reckless endangerment is not persuasive. We are searching here for a level of stigma of the individual that marks a forfeiture proceeding as criminal in nature in the constitutional sense. There may be some vague public condemnation associated with the forfeiture of a home, but that same vague condemnation also occurs when homes are lost in the context of proceedings that are indisputably civil, *e.g.*, foreclosures or proceedings to abate a nuisance.

### 4. *Collateral Consequences*

Defendants suggest that they have had to endure collateral consequences that flowed from the forfeiture here—forced relocation and economic devastation—and that those consequences demonstrate the punitive nature of the forfeiture proceeding. But those are consequences peculiar to these defendants and, for all that we can determine on this record, are the specific results of their tactical choices. The consequences are not the result of a legislative choice to impose those particular burdens, along with forfeiture, in all cases. Indeed, assuming full participation in a mitigation hearing, it may be that no offender would have to suffer the collateral consequences that defendants have experienced.

## D. *Conclusion*

Having examined the forfeiture scheme provided at Oregon Laws 1989, chapter 791, in light of the foregoing elements, we conclude that nothing in the scheme negates the legislature's intent to provide a civil procedure and sanction. For purposes of Article I, section 12, a forfeiture proceeding under that statute is not "so far criminal" on its face as to constitute jeopardy.

## III. DOUBLE JEOPARDY UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

We turn to defendants' double jeopardy arguments under the Fifth Amendment to the United States Constitution. Defendants first argue, as they did with respect to the Oregon former jeopardy provision, that their failure to file a claim in the forfeiture proceeding does not foreclose a present double jeopardy claim. They acknowledge that many federal courts that have considered the question under the Fifth Amendment have concluded that failure to appear in a forfeiture proceeding does preclude any later attempt to base a double jeopardy claim on the resulting forfeiture. They note, however, that that conclusion never has been approved by the United States Supreme Court.

We already have discussed our reservations respecting the logic that federal courts have employed in support of their view that failure to appear in a forfeiture proceeding somehow forecloses any subsequent double jeopardy claim. At the same time, we must acknowledge that that view has gained almost universal acceptance among the circuits. But this case does not require us to resolve our analytical difference with the circuits, because defendants' federal double jeopardy claim fails on the merits.

The Supreme Court directly faced the question whether and when a forfeiture proceeding can create "jeopardy" for purposes of the Fifth Amendment in *United States v. Ursery*, 518 US 267, 135 L Ed 2d 549, 116 S Ct 2135 (1996). The facts in *Ursery* are not dissimilar to the facts in the present case. There, the United States instituted a forfeiture action against a home after police found seeds, stems, and

grow lights inside the home and marijuana plants growing nearby.[12] The owner filed a claim in the proceeding and ultimately settled the United States' forfeiture claim for $13,250. When the owner later was indicted on charges of manufacturing marijuana, he asserted a double jeopardy claim under the Fifth Amendment.

The Supreme Court rejected the owner's double jeopardy claim based on the following two-part analysis:

"That a forfeiture is designated as civil by Congress and proceeds *in rem* establishes a presumption that it is not subject to double jeopardy. * * * Nevertheless, where the 'clearest proof' indicates that an *in rem* civil forfeiture is 'so punitive either in purpose or effect' as to be equivalent to a criminal proceeding, that forfeiture may be subject to the Double Jeopardy Clause."

518 US at 289 n 3.

Applying the first part of that analysis to the facts before it, the Court found that Congress had designated the forfeiture proceeding at issue in that case as "civil" in a variety of ways, thereby establishing the presumption. Moving to the second step, the Court found no "clear proof" that the forfeiture proceeding was so punitive that it amounted to a criminal proceeding. In discussing that second step, the court expressly rejected arguments that the statute was shown to be punitive by the fact that it tied forfeiture to criminal activity, included an "innocent owner" defense, and served a deterrent purpose. *Id.* at 291-92. The Court found it "most significant" that the statute served some important nonpunitive purposes, *i.e.*, discouraging illegal use of property and ensuring that persons do not profit from illegal activities. *Id.* at 290.

Defendants' Fifth Amendment double jeopardy claim cannot prevail under the *Ursery* analysis. Clearly, the forfeiture scheme provided by Oregon Laws 1898, chapter 791, satisfies the first step of that analysis: Like the federal statute, it announces, on its face, the legislature's intent that it be

---

[12] The forfeiture in *Ursery* was brought under 21 USC section 881(a)(7), which provides a procedure for forfeiting property, including real property, that is used in the manufacture of controlled substances.

remedial and nonpunitive. Or Laws 1989, ch 791, § 1(5). Neither have defendants pointed to anything in the statutory scheme that would suggest that they might obtain a different outcome at the second step of the *Ursery* analysis. In fact, most of the aspects of the overall scheme that defendants tout as indicative of the statute's overwhelmingly criminal nature are aspects that the court in *Ursery* expressly dismissed as inconsequential—for example, the presence of a traditionally criminal legislative purpose of deterring prohibited conduct and the inclusion of an "innocent owner" defense.[13] Ultimately, the forfeiture scheme provided at Oregon Laws 1989, chapter 791, is indistinguishable, for purposes of the present analysis, from the forfeiture scheme that the *Ursery* court held to be civil. Consequently, we conclude that, like the forfeiture scheme that was at issue in that case, the forfeiture scheme in Oregon Laws 1989, chapter 791, is "neither 'punishment' nor criminal for purposes of the [Fifth Amendment's] Double Jeopardy Clause." *Ursery*, 518 US at 292.

## IV. CONCLUSION

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[13] Neither is the present case distinguishable because defendants lost $60,000 in equity, whereas the defendant in *Ursery* lost only $13,250. As a more recent United States Supreme Court case, *United States v. Hudson*, 522 US 93, 101-02, 118 S Ct 488, 139 L Ed 2d 450 (1997) makes clear, the federal Double Jeopardy Clause evaluates a statute on its face to determine whether it provides what amounts to a criminal sanction, not on the basis of the actual sanction imposed in a particular case. To the extent that defendants' loss was greater than the forfeiture that was deemed civil in *Ursery*, they have not demonstrated that the difference arises from a facial difference between the overall forfeiture schemes.