Argued and submitted March 15, reversed and remanded for a new trial
October 18, 1989

STATE OF OREGON,
*Respondent,*

*v.*

PATTY S. THOMAS,
*Appellant.*

(DA 362219-8802; CA A49453)

780 P2d 1197

Richard L. Lonergan, Portland, argued the cause for appellant. With him on the brief was Clint A. Lonergan, Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

EDMONDS, J.

Deits, J., dissenting.

## EDMONDS, J.

Defendant appeals from a judgment finding her guilty of theft in the third degree, a violation. ORS 164.043. Before defendant pled not guilty to the charge, the trial court, pursuant to ORS 161.565(2),[1] amended the complaint to convert the charge from a misdemeanor to a violation. In a trial to the court, she was found guilty.[2] Defendant argues that she was denied her constitutional rights under Article I, section 11, of the Oregon Constitution and the Fourteenth Amendment as a defendant in a criminal proceeding. We reverse.[3]

ORS 161.565(2) empowered the court to reduce a misdemeanor to a violation on a case-by-case basis by following a specified procedure. The legislature is not prohibited from decriminalizing a criminal offense. However, the legislature cannot avoid the constitutional guarantees that attach to a criminal prosecution by decriminalizing conduct while retaining the consequences that result from prosecution and conviction for a crime. *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977). The issue, therefore, is whether a prosecution for theft III may be tried as a violation without the

---

[1] ORS 161.565(2) provided at the relevant time:

"Upon appearance of the defendant upon any misdemeanor charge other than a misdemeanor created under the Oregon Vehicle Code, and before asking under ORS 135.020 how the defendant pleads to the charge, the court may declare on the record its intention, absent objection by the district attorney, to treat the offense in the case as a violation. If the district attorney does not object to such treatment, the accusatory instrument shall be amended to denominate as a violation the offense in the case, and the offense, for purposes of the case, shall thereafter be treated as a violation, subject to a fine as provided in ORS 161.635 for violations. If the district attorney does object, the offense in such case shall thereafter continue to be treated as a crime. If the offense is denominated a violation pursuant to this subsection, the court shall, when it enters judgment in the case, clearly denominate the offense as a violation in the judgment order."

It was amended by the 1989 legislature to delete the provision allowing the court to decide to treat the offense as a violation. The amended statute now requires the District Attorney to declare on the record whether or not he intends to treat the offense as a violation. A case proceeds as a violation unless the District Attorney affirmatively states that the case shall proceed as a misdemeanor. Or Laws 1989, ch 1053, § 17.

[2] The trial court made this finding:

"I make a specific finding that I would find her guilty by a preponderance of the evidence, but if it were beyond a reasonable doubt I would enter a finding of not guilty."

[3] Because we hold that the prosecution of defendant continued to be criminal in nature, we do not consider her other arguments concerning the constitutionality of ORS 161.565(2) or reach her other assignments of error.

constitutional safeguards guaranteed in criminal prosecutions. If theft III, as a violation, retains traits that characterize a criminal prosecution, then defendant's rights to a jury trial and to have her guilt proven beyond a reasonable doubt cannot be abrogated by the legislature.

In *Brown,* the court established five factors that must be balanced in deciding this issue. No single element is conclusive. 280 Or at 102. The factors are:

(1) The type of the offense;

(2) The nature of the penalty;

(3) The collateral consequences associated with a conviction;

(4) The punitive significance of the conviction to the community;

(5) The criminal type pre-trial practices such as arrest, physical restraint, search, booking and pre-trial detention.

The prohibition against theft is a cultural value that predates our constitutions and the common law. The prohibition has been carried into statutory enactments to the extent that, in Oregon today, ORS chapter 164 contains at least nine statutory offenses that include the word "theft" in their definition.[4] At common law and by statute, a prosecution for theft has always required proof of *"mens rea,"* proof of guilt beyond a reasonable doubt and the right to a jury trial. Those factors weigh in favor of the argument that theft III, as a violation, retains its criminal characteristics.

The maximum penalty for theft III, as a violation, is a fine of $250. At the time of the adoption of the Oregon Constitution, petty offenses where the penalties were light did not have criminal connotations. *See Behnke v. Jordan,* 275 Or 199, 202, 550 P2d 736 (1976). As to collateral consequences, ORS 161.565(3) provides that a "conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime." Both of those factors weigh in favor of the argument that the criminal characteristics of theft III as a

---

[4] ORS 164.043-164.095; ORS 164.125.

misdemeanor are not retained when the charge is converted to a violation. *See City of Portland v. Tuttle,* 295 Or 524, 668 P2d 1197 (1983).

The fourth factor focuses on the stigma or condemnation that accompanies a conviction. "What distinguishes a criminal from a civil sanction * * * is the judgment of community condemnation which accompanies and justifies its imposition." Hart, "The Aims of the Criminal Law," 23 Law & Contemp Probs 401, 404 (1958). Non-penal sanctions do not inevitably dictate the community's perception of the conviction. *See Kennedy v. Mendoza-Martinez,* 372 US 144, 168, 83 S Ct 554, 9 L Ed 2d 644 (1963). Rather, that perception is typically based more on societal values. This factor weighs in favor of defendant.

The final factor requires examination of the pre-trial practices associated with the application of ORS 161.565(2) to theft III. Because the arrest is initially for a misdemeanor, all of the procedures that accompany being arrested for a crime attach. It is only after the defendant is brought to court for arraignment and after the court modifies the charge that non-criminal processes come into play.

Having weighed each factor, without any one factor being dispositive, we conclude that, when ORS 161.565(2) is applied to ORS 164.043, a prosecution for theft III as a violation does not lose the traits that characterize a criminal prosecution. We are particularly persuaded by the factors pertaining to the type of offense and its social significance in the community. Our culture has always viewed theft as a crime and continues to do so. Because of that heritage, we believe it would be difficult for our society to discriminate between the significance of a conviction for theft III, a misdemeanor, with its attendant criminal connotations, and a conviction for decriminalized theft III, a violation. Accordingly, defendant was entitled to a jury trial and to have her guilt proven beyond a reasonable doubt.

Reversed and remanded for a new trial.

**DEITS, J.,** dissenting.

Because I would conclude that theft III may be tried as a violation pursuant to ORS 161.565(2), I dissent.

The majority relies principally on two factors in the analysis in *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977), in reaching the conclusion that theft III may not be tried as a violation. The majority states that "[w]e are particularly persuaded by the factors pertaining to the type of offense and its social significance in the community." 99 Or App at 36. However, I do not think that either factor is persuasive. As the *Brown* court recognized, the factor concerning the "type of offense" is "on the whole * * * not very helpful," because the type of offense is largely a legislative determination and, therefore, subject to change. 280 Or at 102. As the court notes, traffic offenses were initially treated as crimes and, yet, there is nothing to prevent the legislature from subsequently decriminalizing such behavior. 280 Or at 103.

The other factor in the *Brown* analysis relied on by the majority, the "punitive [social] significance" of the offense, generally is also not very helpful, because it is too subjective. As stated in *Brown:*

> "This test, whether a judgment carries stigmatizing or condemnatory significance, has been criticized for its difficulty. *See Charney, supra,* at 496. True, we have no litmus paper for punitive significance, and that used by the United States Supreme Court shows red and blue in inconsistent patterns. In part this difficulty is unavoidable, since the significance of a law may differ in the eyes of legislators, of defendants, and of the general public. Moreover, their views can change with time, and a legislative decision to decriminalize an offense may lead the public's perception as well as follow it." 280 Or at 106.

In *Brown,* the court gave this factor significant consideration, because it was able to point to specific comments in the legislative history that emphasized the serious nature of the offense in question, a first offense DUII. The court noted that the legislative interim committee that prepared the code "was at pains to point out that it did not regard this offense as less serious than reckless driving and others that remain 'major' or 'serious' offenses, triable as crimes." 280 Or at 107. In addition, the DUII statute made a second violation of the statute a criminal offense.

In this case, there were no similarly helpful objective indicators of the legislature's view of the punitive nature of

the offense. Rather, the majority's assessment simply relies on the subjective conclusion that "[o]ur culture has always viewed theft as a crime and continues to do so." 99 Or App at 36. Under the majority's application, ORS 161.565(2) would be inapplicable to the vast majority of misdemeanors to which it was intended to be applied, *e.g.*, assault and menacing, because they are offenses which our culture has "always" viewed as crimes.

The "nature of the penalty" is the most important consideration in determining whether theft III may be treated as a violation under the statute. The *Brown* court thus stated "the prescribed penalty is generally regarded as the single most important criterion, at least when it involves imprisonment." 280 Or at 103. In this case, theft III, as a violation, carries with it a maximum fine of $250 and no imprisonment. That penalty is far below the $1,000 that the *Brown* court found to be the "margin" of a criminal sanction. 280 Or at 105.

The other factors that are to be considered under *Brown* are the "collateral consequences" of the conviction and the pretrial procedures associated with the offense. Regarding the "collateral consequences," the majority correctly points out that ORS 161.565(3) provides that a "conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime." As to pretrial procedures, because an arrest for theft III is initially for a misdemeanor, all procedures that accompany a custodial arrest attach, at least they do until the defendant is brought to court for arraignment, and the court modifies the charge to a violation. This factor would weigh in favor of the majority's result.

I would conclude that, when all of the *Brown* factors are balanced, a different conclusion from the one that the court reached in *Brown* is compelled here. The fine is of a significantly lesser magnitude than in *Brown*. It is well below the amount characterized in *Brown* as the "margin" of a criminal sanction. In addition, the secondary sanction of the loss of one's driver's license is not available, as it was in *Brown*. Further, there is nothing comparable in the legislative history that emphasizes the seriousness of the offense. I would conclude that the legislature did free the offense of theft III of the punitive traits that characterize a criminal prosecution and

that prosecution of the offense as a violation pursuant to ORS 161.565(2) is permissible.

Defendant makes several other assignments of error. However, I would not hold that any of them warrant reversal. First, defendant argues that she is "entitled to a jury trial, counsel, the right to confront witnesses, to demand the nature of the charge, right against self-incrimination and proportional punishment." Because I would hold that theft III was decriminalized and, hence, that the proceeding below was a civil matter, these arguments are without merit. Secondly, defendant argues that ORS 161.565(2) violates the separation of powers provision of Article III, section 1, of the Oregon Constitution, and deprives her equal protection of the laws as guaranteed by both the Oregon and United States Constitutions. These arguments, however, were not made to the trial court. Moreover, defendant cites no authority for her equal protection argument and does not articulate an independent state constitutional theory. Therefore, I would not consider these issues at this time. *See, e.g., State v. Mendez,* 308 Or 9, 19, 774 P2d 1082 (1989); *State v. Barfield,* 79 Or App 688, 691, 720 P2d 394 (1986).

Defendant also assigns as error that the trial court erroneously sustained the prosecution's objection to two questions asked by defendant on cross-examination of LaFollette. Defendant wanted to ask if he had been accused by the union representative of being racist. However, even if the exclusion of that evidence was error, it was harmless, because it would have been cumulative of other evidence that was admitted. There was testimony that LaFollette had fired several blacks and that at least two of those decisions were reversed by his superiors. In addition, the union representative testified on direct examination that, in his opinion, LaFollette was prejudiced against blacks and that he had written a letter to LaFollette's supervisor stating his belief.

Finally, defendant assigns as error the trial court's refusal to allow her to testify that she had no prior convictions. The trial court, however, properly denied her attempt to bolster her credibility before it was attacked. *See* OEC 404(2)(a); *State v. Bailey,* 87 Or App 664, 667, 743 P2d 1123 (1987).

For those reasons, I would affirm the decision of the trial court.

Joseph, C. J., and Richardson and Rossman, JJ., join in this dissent.