Argued and submitted October 5, 1992; resubmitted In Banc January 6, affirmed March 17, reconsideration denied May 12, petition for review allowed July 27, 1993

(317 Or 271)

# STATE OF OREGON,
*Respondent,*

*v.*

# ARTHUR AUGUST RODE,
*Appellant.*

(DA454553; CA A74503)

848 P2d 1232

Garrett A. Richardson, Portland, argued the cause for appellant. With him on the brief was Multnomah Defenders, Portland.

Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

De MUNIZ, J

Edmonds, J., dissenting.

## De MUNIZ, J.

Defendant was charged with attempted assault in the fourth degree and harassment. ORS 163.160(1); ORS 166.065(1)(a)(A). At arraignment, the district attorney elected to try the cases as violations under ORS 161.565(2). Defendant's motion for a jury trial was denied, and in a trial to the court, he was found guilty on both charges.

ORS 161.656(2) provides:

> "Upon appearance of the defendant upon any misdemeanor charge, other than a misdemeanor created under ORS 811.540 and 813.010, before the court asks under ORS 135.020 how the defendant pleads to the charge, *the district attorney shall declare on the record the intention whether or not to treat the offense in the case as a violation. The case shall proceed as a violation unless the district attorney affirmatively states that the case shall proceed as a misdemeanor.* If the case proceeds as a violation, the accusatory instrument shall be amended to denominate as a violation the offense in the case, and the offense, for purposes of the case, shall thereafter be treated as a violation subject to a fine as provided in ORS 161.635 for violations. If the district attorney declares an intention to treat the offense as a misdemeanor, the offense in the case shall thereafter continue to be treated as a crime. If the offense is denominated a violation pursuant to this subsection, the court shall, when it enters judgment in the case, clearly denominate the offense as a violation in the judgment." (Emphasis supplied.)

Defendant argues that he was denied his constitutional right to a jury trial under Article I, section 11, of the Oregon Constitution,[1] when the district attorney elected to try these cases as violations under ORS 161.656(2).

Defendant relies on *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977), and on our application of *Brown* in *State v. Thomas*, 99 Or App 32, 780 P2d 1197 (1989) *aff'd on other grounds* 311 Or 182, 806 P2d 689 (1991).[2] In *Brown* the legislature had sought to "decriminalize" the first offense of driving under the influence of

---

[1] Article I, section 11, of the Oregon Constitution provides for the right to a jury trial "[i]n all criminal prosecutions." ORS 136.001(1) merely restates that constitutional right.

[2] In *Thomas*, the defendant had been charged with theft in the third degree and the prosecutor had elected to try the case as a violation. We applied the indicia

intoxicants (DUII) by making it a Class A traffic infraction instead of a traffic crime. The court acknowledged that the legislature could decriminalize traffic offenses but held that it had failed to do so for DUII. The court identified a number of factors that it considered helpful in determining what constitutes a criminal prosecution. Those factors include: the type of offense; the prescribed penalty; the collateral consequences; the punitive intent of the sanction and the pre-trial practices associated with an arrest and detention for the offense. It noted that no one factor is conclusive. As to DUII, the legislative history showed that the legislature did not regard the offense as less serious than others that remained triable as crimes, that the penalty of a $1,000 fine was significantly punitive and that the pre-trial practices comported with criminal rather than civil procedure. Those three factors indicated that DUII retained too many penal characteristics not to be a criminal prosecution for constitutional purposes.

Defendant argues that three of the factors identified in *Brown*, pre-trial procedures, community condemnation and the historical perception of assaultive behavior as a "crime," show that assaultive behavior has "criminal characteristics" that preclude its prosecution without the constitutional safeguard of a jury trial. The state urges that we reassess applying *Brown* to ORS 161.565(2). It contends that the *Brown* analysis was designed to determine whether the legislature successfully has decriminalized a given crime and that it does not make sense to apply the analysis to a statute that provides for treating most misdemeanors as violations. It contends that it is "unmanageable" for this court to go through the *Brown* analysis each time one of the hundreds of misdemeanors described in the Oregon Revised Statutes is tried as a violation under ORS 163.565(2).

We agree with the state that the *Brown* analysis is of limited assistance in determining the issue here. ORS 161.565(2) does not address a distinct offense but, rather, a

identified in *Brown* and held that the defendant was entitled to the constitutional safeguards of a jury trial and proof beyond a reasonable doubt. In its opinion, the Supreme Court did not reach the jury trial issue, because it determined that, even if the charge was prosecuted as a violation, the statutory requirement in ORS 136.415 of proof beyond a reasonable doubt applies to "criminal actions," which includes violations. ORS 131.005(6).

whole class of offenses. *See State v. Thomas, supra,* 311 Or at 186 n 5; ORS 161.565(2). "Offenses" are either crimes, violations or infractions. ORS 161.505. Before enactment of ORS 161.565(2), crimes were felonies, ORS 161.525, or misdemeanors. ORS 161.545. However, the effect of ORS 161.565(2) is to change most misdemeanors to violations, unless the district attorney, based on an exercise of discretion, determines otherwise.[3]

The legislature is free to devise a system to sanction violations of law by other than a criminal prosecution. *See Brown v. Multnomah County Dist. Ct., supra,* 280 Or at 101. In doing so here, it did not retain criminal punishments, as it did for the offense of DUII considered in *Brown.* The penalty for conviction of a violation is minimal. There is no imprisonment, the maximum fine is $250, and there are no collateral consequences that arise from a violation conviction. ORS 161.635(3); ORS 161.565(3).

The aspect of criminal prosecution that does remain is the possibility of pre-arraignment arrest. ORS 133.045. That aspect, alone, is not of such gravity as to render the prosecution of a violation a "criminal prosecution." That is so, particularly in the light of the alternative pre-trial procedure for offenses subject to prosecution under ORS 161.565(2). ORS 133.055 authorizes a citation in lieu of custody, which was, in fact, the procedure used in this case.

Defendant's argument that assaultive behavior retains "criminal characteristics," because, historically, such behavior has been viewed as criminal and sanctioning it carries community approbation, is based on the premise that behavior that has traditionally been deemed "criminal" must always be. However, the legislature is free to enforce obligatory conduct by other than the criminal law, *see Brown v. Multnomah County Dist. Ct., supra,* 280 Or at 100, or to determine that some offenses will be punished less severely than others. *See, e.g.,* ORS 475.992(4)(f); *In re Chase,* 299 Or 391, 404, 702 P2d 1082 (1985) (possession of marijuana in

---

[3] No issue has been raised in this case about the prosecutor's apparently unfettered discretion to prosecute the case as a misdemeanor. We express no opinion about that.

certain quantities is punished less severely than other possessory offenses). While the legislators' decisions to do so may sometimes reflect societal changes, they also may lead public perception. 280 Or at 106. By enacting ORS 161.565(2), the legislature, for whatever policy reasons,[4] determined that misdemeanors no longer represent anti-social behavior serious enough to warrant criminal prosecution in the absence of a district attorney's affirmative decision otherwise.

ORS 161.565(2) permits conduct that could be prosecuted as a misdemeanor to be prosecuted as a violation. That is what happened here. Defendant's conduct was not a crime, and the prosecution of the conduct was not a criminal prosecution. Defendant has no right under Article I, section 11, to a jury trial. Insofar as our opinion in *State v. Thomas, supra*, holds otherwise, it is overruled.

Affirmed.

**EDMONDS J.,** dissenting.

Today, the majority holds that the legislature can constitutionally abolish an Oregon citizen's right to a jury trial under Article I, section 11, of the Oregon Constitution when he is charged with attempted assault in the fourth degree and harassment. It does so in the spirit of pragmatism, because our courts are swamped with an ever-increasing criminal caseload. However commendable is its motive and persuasive its reasoning, the precedent that it sets encroaches on a precious right guaranteed by the Oregon Constitution, the right of an accused in a criminal proceeding to have a trial by jury.

Of course, the majority says that the constitutional guarantee of a right to trial by jury is no longer necessary when the prosecution has decided at arraignment to prosecute the charges as violations instead of misdemeanors, because what was once a criminal prosecution becomes something else. The court in *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977), appropriately rejected that kind of reasoning. It said that there is no easy test for

---

[4] The legislative history shows that the measure was intended to be a cost-saving one. *State v. Thomas, supra*, 311 Or at 186.

determining when a prosecution by the state is a " 'criminal prosecution' within the meaning of the constitutional guarantees. * * * But it does not follow that a law can avoid this result simply by avoiding the term 'criminal' in defining the conduct to be penalized. *Constitutional guarantees have more substance than that.*" 280 Or at 101. (Emphasis supplied.)

The importance of the right to jury trials in such cases is illustrated by *State v. Thomas*, 99 Or App 32, 780 P2d 1197 (1989), which the majority overrules. Patty Thomas was a black bus driver who was charged by her white supervisor with the theft of $1, a class C misdemeanor. The prosecutor elected to try the case under *former* ORS 161.565(2) as a violation rather than a misdemeanor, which permitted him to try the case to the court and to prove the charge by a preponderance of the evidence. The verdict likely would turn on whether the trier of fact believed Thomas or the supervisor. At the trial, Thomas offered evidence that she had been framed by her supervisor and that he had fired several other black people. At least two of those fired employees were reinstated by his superior. At the end of the trial, the trial judge found her guilty. He said that had the law required proof beyond a reasonable doubt rather than by a preponderance, he would have found her *not guilty*.

On appeal, we reversed the conviction and held that, even though the charge was tried as a violation, section 11 guaranteed Thomas the right to a jury trial and the right to require the state to prove her guilt be proven beyond a reasonable doubt. On review, the Supreme Court affirmed, holding that there was no indication in the legislative history that the legislature intended that ORS 161.565(2) provide for a burden of proof standard of less than proof beyond a reasonable doubt. *State v. Thomas*, 311 Or 182, 806 P2d 689 (1991). It did not reach the issue of whether Thomas was entitled to a jury trial.

Conceivably, Patty Thomas' employment, her standing and reputation in the community and her record as a law abiding citizen all were jeopardized because the Theft III charge was brought against her. If she had been convicted, the onus of that conviction would trail after her for the rest of her life whether the conviction was termed a conviction for "Theft III," a "violation," or "Theft III," a "misdemeanor."

Every employment application, credit request, insurance form, or other ordinary life activity would be potentially impacted by what had occurred as the result of the complaint of one person in her past. To the Patty Thomas' of the state, the majority opinion says that the right to have an adjudication by a jury of peers on what begins as a criminal proceeding can be abrogated at the discretion of the prosecutor. Surely, section 11's guarantee must have more substance than that.

The majority correctly says that the legislature is free to define what is criminal and what is not. But that is not what has happened when the legislature enacted ORS 161.565(2). No conduct that was once a crime is declared to be lawful. Rather, under the statute, a criminal charge commences as a criminal proceeding with all its punitive traits intact and purportedly changes in the midst of the process. If the prosecutor elects, the prosecution ends up being classified as a non-criminal proceeding, potentially resulting in a conviction for a "violation." The change in many ways is semantical, not substantive. A defendant can be arrested, must be arraigned, and can be required to post security for future court appearances before the prosecution elects to charge him with a violation. Even after the election, the charge is still prosecuted by the state who can call agents of the government who will accuse the defendant of conduct that would otherwise be considered criminal. The defendant who desires to be vindicated must appear and defend himself in an environment identical to what would have occurred had the prosecutor not made his election. The state must prove his guilt beyond a reasonable doubt just as in a criminal prosecution.

The subject matter of the trial is about conduct that most citizens would consider criminal when prosecuted by the government. For instance, Patty Thomas was charged with theft. Defendant is charged with attempted assault. The public's understanding of the implication of those charges comes from the fact that theft and assault were crimes at common law.[1] There can be no doubt that the framers of

---

[1] Our sense of "right and wrong" is a product of our cultural background. For instance, theft is a subject of prohibition in the Mosaic Ten Commandments, a standard that is a cornerstone of the foundation on which our system of jurisprudence is based. In contrast, some cultures have deemed theft as moral conduct. Constitutionally, the legislature could decide that some or all forms of theft are no longer unlawful, but that is not what our legislature has done. Even the theft of $1

section 11 contemplated that when the state prosecuted defendants for theft and assault, those prosecutions fell within the meaning of the phrase "in all criminal prosecutions" in section 11. That understanding will not be altered by changing the nomenclature describing the conviction. In sum, the only material difference between this proceeding and a criminal proceeding, when their punitive traits are evaluated, is in the nature of the sanction that can be imposed if conviction results.

The majority's focus on the nature of the available sanctions ignores the basic nature of the proceeding and its effect on Oregon citizens who are presumed to be innocent when accused of a crime. In *Brown v. Multnomah County Dist. Ct., supra*, the court recognized the problem that occurs when the legislature decriminalizes conduct while retaining the traits of a criminal proceeding. It held that if a prosecution retains many of the punitive traits that characterize a criminal prosecution, then a defendant's right to a jury trial under section 11 cannot be abolished by the legislature. 280 Or at 110. There is much wisdom in that holding, because more than the right to a jury trial may hinge on whether a proceeding is "criminal." The Bill of Rights and section 11 guarantee a defendant in a criminal proceeding the right to a written accusation, to a trial in the county where the offense was committed, to confront the witnesses against him in open court and to subpoena witnesses, and to be represented by counsel. They protect him against double jeopardy, from being compelled to testify against himself and from being convicted for conduct which was not criminal when committed. If the majority is correct, it logically follows that these rights no longer exist for citizens like Thomas and defendant.

The majority suggests that the legislature can determine that certain conduct no longer represents "anti-social behavior serious enough to warrant criminal prosecution." 118 Or App at 670. The majority misses the import of ORS 166.565(2) when it maintains that that is the effect of the

---

can constitute a class C misdemeanor. *See* ORS 164.043. So long as the legislature declares all thefts to be unlawful, the public perception that a crime has been committed will exist and the constitutional guarantees that insure that innocent people will not be convicted should attach to any prosecution by the state for such offenses.

statute. Rather, the statute enables the state to prosecute criminal conduct in a proceeding that retains most of the traits of a criminal proceeding, but obviates the accused's right to a jury trial. Interpreted in the way that the majority does, the statute permits the state to do what section 11 proscribes and therefore, it is unconstitutional.

I dissent.

Warren, Riggs and Durham, JJ., join in this dissent.