Argued and submitted November 30, 2004, affirmed June 1, petition for review
denied October 20, 2005 (339 Or 450)

# STATE OF OREGON,
*Respondent,*

*v.*

# GREGORY SCOTT PAGE,
*Appellant.*

## 0201-41082; A119561

113 P3d 447

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Mary-Shannon Storey, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Laura S. Anderson, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong, Judge, and Deits, Judge pro tempore.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant appeals a judgment of conviction for misdemeanor driving under the influence of intoxicants (DUII). ORS 813.010. He assigns error to the trial court's denial of his motion to dismiss on the DUII charge on former jeopardy grounds. We affirm.

The facts in this case are largely procedural. At 3:30 a.m. on January 9, 2002, police stopped defendant and issued two citations to him, one for felony DUII, ORS 813.010, and one for misdemeanor driving while suspended (DWS), ORS 811.182(4). On January 29, 2002, a Multnomah County deputy district attorney issued an information charging defendant with misdemeanor DUII and stamped the citation for misdemeanor DWS with the legend "PROCEED AS VIOLATION," as ORS 161.566(1) (2001)[1] empowered her to do. On February 5, 2002, defendant failed to appear as required by the citations, and the court entered a default judgment of conviction against him for DWS as a Class A violation. ORS 161.566(3) (2001).[2]

Defendant thereafter moved to dismiss the pending DUII charge on former jeopardy grounds, asserting that, under both ORS 131.515 and Article I, section 12, of the Oregon Constitution, his conviction for DWS based on his January 9, 2002, conduct barred a subsequent prosecution for DUII arising from the same conduct.[3] The trial court

---

[1] Because defendant's prosecution occurred in 2002, the 2001 statute is applicable. ORS 161.566(1) (2001) provides:

"Except as provided in subsection (4) of this section, a prosecuting attorney may elect to treat any misdemeanor as a Class A violation. The election must be made by the prosecuting attorney orally at the time of the first appearance of the defendant or in writing filed on or before the time scheduled for the first appearance of the defendant. If no election is made within the time allowed, the case shall proceed as a misdemeanor."

[2] ORS 161.566(3) (2001) provides:

"If a prosecuting attorney elects to treat a misdemeanor as a Class A violation under this section, and the defendant fails to make any required appearance in the matter, the court may enter a default judgment against the defendant in the manner provided by ORS 153.102. The maximum fine that the court may impose under a default judgment entered pursuant to ORS 153.102 is the maximum fine for a Class A violation, as provided in ORS 153.018."

[3] Although defendant's motion to dismiss cited "the United States Constitution," he did not argue federal constitutional grounds in either his memoranda

denied the motion. Defendant then stipulated "that on January 9th of 2002 on a public road in Multnomah County, Oregon, he was driving at a time when he was adversely and noticeably affected by alcohol." The trial court found defendant guilty of DUII and entered a judgment of conviction.

■    We start with the question whether, under the former jeopardy statute, defendant's conviction for DWS bars the state from prosecuting him for DUII. ORS 131.515 provides:

"Except as provided in ORS 131.525 and 131.535:

"(1)   No person shall be prosecuted twice for the same offense.

"(2)   No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of the commencement of the first prosecution and establish proper venue in a single court.

"(3)   If a person is prosecuted for an offense consisting of different degrees, the conviction or acquittal resulting therefrom is a bar to a later prosecution for the same offense, for any inferior degree of the offense, for an attempt to commit the offense or for an offense included therein.

"(4)   A finding of guilty of a lesser included offense on any count is an acquittal of the greater inclusive offense only as to that count."

Because this case involves a conviction for a violation, it may implicate ORS 153.108(1). That statute provides:

"Notwithstanding ORS 131.505 to 131.535, if a person commits both a crime and a violation as part of the same criminal episode, the prosecution for one offense shall not bar the subsequent prosecution for the other. However, evidence of the first conviction shall not be admissible in any subsequent prosecution for the other offense."

ORS 153.108(1) applies to ORS 131.515 in its entirety, with the exception of subsection (1). *State v. Warner*, 200 Or App

---

supporting his motion to dismiss or his oral argument to the trial court. Nor does he make a federal constitutional argument to us. Therefore, we do not address whether defendant's prosecution is barred by the federal constitution. *See State v. Riggs*, 143 Or App 427, 923 P2d 683 (1996), *rev den*, 325 Or 247 (1997).

65, 69-71, 112 P3d 464 (2005). Defendant does not argue that ORS 131.515(1) applies to his case. Thus, the threshold question is whether ORS 153.108(1) operates to allow the state to prosecute defendant for DUII, notwithstanding ORS 131.515.[4]

Defendant presents his statutory argument as at least partially linked to his constitutional argument that, notwithstanding the fact that he was nominally convicted of a violation, that prosecution was, in fact, criminal in nature, and thus jeopardy attached. We will address the constitutional question momentarily. However, the result of the analysis of that constitutional question is of no import to the statutory analysis. ORS 153.108(1) discusses offenses as "violations" and "crimes," not as "criminal in nature." Thus, we need not yet determine whether the state's prosecution of defendant for DWS was criminal in nature.

For ORS 153.108(1) to apply, a defendant must "commit[ ] both a crime and a violation as part of the same criminal episode." ORS 153.108(1). The prosecution that defendant seeks to avoid is for the crime of DUII. The question is whether he committed a violation as part of the same criminal episode.

Granted, defendant was convicted of a violation. He argues that that is not enough. He argues that, because the violation of which he was convicted was simply an analogue of misdemeanor DWS and because he was cited for the misdemeanor at the time the offense was committed, ORS 153.108(1) does not apply. Although appellate counsel does not use the same language, defendant's trial counsel summarized defendant's argument this way: "[Defendant] didn't commit both a crime and violation. He committed two crimes."

Defendant was cited for violating ORS 811.182, criminal DWS. There is also a statute that defines a violation-level offense of DWS, ORS 811.175. Defendant was not cited for, prosecuted for, or convicted of violating ORS

---

[4] For purposes of this opinion, we assume without deciding that defendant was "prosecuted" for DWS for purposes of ORS 131.515 despite the fact that his conviction was entered as a result of his default in responding to the charge.

811.175. The record reflects that he was convicted of violating ORS 811.182, but the conviction for that offense was entered as a Class A violation.

That result is made possible by ORS 161.566 (2001), which allows the district attorney "to treat any misdemeanor as a Class A violation." By operation of ORS 161.566 (2001), when he violated ORS 811.182, defendant became subject to prosecution under ORS 811.182 for either a misdemeanor or a violation. Defendant does not, and cannot, dispute that he was prosecuted for a violation under ORS 811.182. The former jeopardy statute concerns itself with prosecutions, not with citations. Defendant's conviction established as a fact that he had committed a violation. Thus, for purposes of ORS 153.108(1), he committed both a crime (DUII) and a violation (DWS) in the same criminal episode.

The resolution of the statutory question becomes clear once that conclusion is reached. Under the language of ORS 153.108, defendant's prosecution for a violation under ORS 811.182 does not bar his prosecution for the crime of DUII arising from the same episode. *Accord Warner*, 200 Or App at 74; *see also State v. Kambra*, 93 Or App 156, 158, 761 P2d 539, *rev den*, 307 Or 246 (1988) (decided under statutory predecessor to ORS 153.108). Thus, defendant cannot avail himself of the former jeopardy statute.

■ The statutory exception created by ORS 153.108(1) cannot prevail, however, over the former jeopardy protections of Article I, section 12.[5] *Warner*, 200 Or App at 74. The constitution protects against "successive prosecutions of offenses that are criminal in nature," even if one or more of those offenses is nominally a violation. *Id.* (internal quotation marks omitted). The key, of course, is whether defendant's prosecution for DWS was criminal in nature.

*State v. Selness / Miller*, 334 Or 515, 54 P3d 1025 (2002), provides the test for whether a proceeding is criminal in nature under Article I, section 12. In *Selness / Miller*, the Supreme Court concluded

---

[5] Article I, section 12, provides that "[n]o person shall be put in jeopardy twice for the same offence, nor be compelled in any criminal prosecution to testify against himself."

"that the proper test for determining whether an ostensibly civil proceeding is criminal in nature and amounts to 'jeopardy' is as follows. First, we determine whether the legislature intended to create a civil proceeding. If we conclude that the legislature did so intend, then we apply the factors that we have identified as possible indicators of a criminal proceeding and, in particular, the four * * * factors that we have emphasized."

*Id.* at 536. The four factors that the Supreme Court emphasized are

"(1) the use of pretrial procedures that are associated with the criminal law, such as indictment, arrest, and detention; (2) the potential for imposition of a penalty that is historically criminal or "infamous," or that cannot be justified fully in terms of the civil purposes that the penalty supposedly serves; and (3) the potential for a judgment or penalty that carries public stigma; (4) the potential for collateral consequences that, either taken by themselves or added to the direct consequences of the underlying forbidden acts, amount to criminal penalties."

*Id.*[6] Here, the legislature intended ORS 161.566 (2001) to create civil proceedings for violations. Thus, we turn to the factors.

The first of the *Selness / Miller* factors examines the pretrial procedures available. If those procedures are of the sort typically used in a criminal proceeding, then the first factor cuts in favor of concluding that the proceeding is criminal in nature. Defendant's DWS prosecution began as a prosecution for a misdemeanor, invoking all of the trappings of a

---

[6] Those factors are four of the five factors identified in *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977), a case in which the Supreme Court considered whether an offense denominated as a traffic infraction by statute was, in fact, criminal in nature for purposes of triggering defendant's right to a jury trial, to counsel, and to have proof of his crime established beyond a reasonable doubt. Although it was not an Article I, section 12, case, the Supreme Court adopted four of *Brown*'s five factors in *Selness / Miller*, omitting only the "type of offense" factor.

Defendant presents his arguments under *Brown* without citing *Selness / Miller*. However, because *Selness / Miller* adopted four of the *Brown* factors, we consider defendant's arguments on those factors to be applicable under *Selness / Miller*.

criminal prosecution. A defendant charged with a misdemeanor is subject to, among other things, arrest, search incident to arrest, restraint by handcuffs, detention in jail for up to 36 hours before arraignment, and release on a bond if the defendant does not qualify for release on his own recognizance. Until the decision is made by the district attorney to treat the misdemeanor as a violation, a person in defendant's circumstances is subject to criminal pretrial procedures. The severest and most intrusive of those procedures are likely to occur in the 36-hour period after arrest, a period likely to have elapsed before a decision will be made to treat the offense as a violation. Thus, the pretrial procedures factor cuts in favor of a conclusion that a prosecution for misdemeanor DWS as a violation under ORS 161.566 (2001) is criminal in nature.

■     The analysis of the second factor—the nature of the penalty—turns on the potential penalty to which defendant could have been subjected. *Selness / Miller*, 334 Or at 536. "The prescribed penalty is generally regarded as the single most important criterion, at least when it involves imprisonment." *Brown*, 280 Or at 103. However, even a fine can be criminal in nature if its severity "cannot be justified fully in terms of the civil purposes that the penalty supposedly serves." *Selness / Miller*, 335 Or at 536.

ORS 153.018 (2001) provides the penalty schedule for violations, including misdemeanors treated under ORS 161.566 (2001) as violations. Under ORS 153.018 (2001), defendant could not have been imprisoned and the maximum fine for his Class A violation was $600.[7] Thus, the question becomes whether a $600 fine is "excessive in relation to the civil purpose that it purports to serve." *Selness / Miller*, 335 Or at 533.

---

[7] We note that, if the 2003 version of ORS 161.566 were applicable, defendant would have been subject to a misdemeanor-level fine of $6,250 notwithstanding the fact that the state ostensibly prosecuted him for a violation. ORS 161.566 (2003); ORS 151.635(1)(a) (2003). Our analysis in today's opinion is limited to ORS 161.566 (2001); we reserve for another day the question whether the misdemeanor-level fines available under ORS 161.566 (2003) could render prosecutions under that statute "criminal in nature."

In addressing that question, we keep in mind that "[d]eterrence is a legitimate remedial purpose and its presence is perfectly compatible with a conclusion that a proceeding and sanction is civil." *State v. Lhasawa*, 334 Or 543, 560, 55 P3d 477 (2002). We hold today that a $300 fine for careless driving is not excessive in relation to its civil purpose to deter. *Warner*, 200 Or App at 76. In 1977, the Supreme Court explained that a $1,000 fine for infraction-level DUII "must be at the margin of legislative discretion." *Brown*, 280 Or at 105. Those guideposts lead us to conclude that a potential fine of $600 for DWS is not excessive in light of its civil purpose. Once the state has suspended a person's driving privileges, the suspension is often difficult to enforce. The state needs a powerful deterrent to enforce that suspension, and a $600 fine serves well as that deterrent. The fine is certainly no slap on the wrist, but it is not so excessive as to rise to the level of criminal punishment. Thus, the second *Selness / Miller* factor cuts against concluding that defendant's prosecution for DWS was criminal in nature.

On the third factor—the stigmatizing effect of the judgment or penalty—the state correctly notes that *Selness / Miller* "requires a showing of a stigma on the individual and not just a showing of some vague public disapproval of the behavior in question." *Selness / Miller*, 334 Or at 534. Defendant argues that a conviction for DWS is stigmatizing "because it is viewed by society as a criminal conviction." That argument is unpersuasive in light of the fact that the statutes provide for a violation-level citation for DWS. ORS 811.175. Thus, not all persons found driving on a suspended license are charged with a crime. DWS is a regulatory violation and is a creature of the regulatory system. As such, it does not carry the stigma of traditional, common-law crimes.

On the fourth and final factor—the collateral consequences of the judgment and penalty—defendant emphasizes that he is subject to "further suspension of driving privileges, possible classification as a repeat offender, higher car insurance rates, and potential loss of employment." As to those consequences that require state action—further suspension of driving privileges and possible classification as a repeat offender—we agree with the state that those consequences reflect a legitimate legislative goal to prevent drivers

from driving on suspended licenses and are not criminal in nature. *See Brown*, 280 Or at 105. As for the consequences of higher car insurance rates and potential loss of employment, those could follow from many traffic violations. The collateral consequences factor cuts against concluding that defendant's prosecution was criminal in nature.

In sum, three of the four factors weigh against concluding that defendant's prosecution for DWS was criminal in nature. The only factor that weighs in favor of such a conclusion is the potential for the use of criminal pretrial procedures such as arrest and detention. We conclude that the proceeding against defendant for DWS did not become criminal in nature based solely on the available pretrial procedures. *Accord State v. Rode*, 118 Or App 665, 669-70, 848 P2d 1232, *rev dismissed*, 317 Or 486 (1993) (concluding that availability of criminal pretrial procedures did not render prosecution for misdemeanor assault as a violation criminal in nature for purposes of Article I, section 11). Therefore, defendant's subsequent prosecution for criminal DUII was not barred by Article I, section 12.

Affirmed.