Argued and submitted December 29, 2005, reversed and remanded July 5, 2006

## STATE OF OREGON,
*Appellant,*

*v.*

## WALTER V. HEWITT,
*Respondent.*

## 03-01-30037; A124555

138 P3d 873

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Mary-Shannon Storey, Deputy Public Defender, argued the cause for respondent. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief

Defender, Legal Services Division, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Linder and Wollheim,* Judges.

LINDER, J.

---

* Wollheim, J., *vice* Richardson, S. J.

### LINDER, J.

In this case, defendant was cited by police for misdemeanor driving while suspended (DWS)[1] and felony driving under the influence of intoxicants (DUII).[2] At arraignment, the prosecutor elected to reduce the misdemeanor DWS charge to a traffic violation, pursuant to ORS 161.566(1). Defendant failed to appear at the trial on the DWS violation, and a default judgment of conviction was entered. Meanwhile, the felony DUII charge was still pending and was scheduled for trial. Defendant moved to dismiss the DUII charge on statutory and constitutional former jeopardy grounds, based on the DWS judgment. The trial court granted the motion, concluding that the fact that the DWS was originally charged as a misdemeanor made it "criminal" in nature, despite the prosecutor's later decision to prosecute it as a violation. The state appeals, and we reverse.

While this appeal was pending, we decided *State v. Page*, 200 Or App 55, 113 P3d 447, *rev den*, 339 Or 450 (2005), and *State v. Warner*, 200 Or App 65, 112 P3d 464 (2005), *rev allowed*, 340 Or 157 (2006), which the state asserts are controlling. Defendant agrees that his statutory former jeopardy argument is controlled by *Warner*.[3] But he argues that *Page* is not dispositive of his constitutional claim because of differences in the pretrial procedures that applied in this case and in *Page.* We begin by describing our analysis in *Page* and then turn to defendant's argument that *Page* does not control.

In *Page*, the defendant similarly was originally cited for felony DUII and misdemeanor DWS, and the prosecutor later reduced the misdemeanor DWS charge to a violation pursuant to ORS 161.566(1). The DWS violation came to trial, the defendant failed to appear, and a default judgment

---

[1] *See* ORS 811.182(4) (misdemeanor DWS). The citation issued by the officer who stopped defendant described the offense as a misdemeanor, but cited ORS 811.175, which is the violation DWS statute. Notwithstanding that citation, the parties and the court treated the citation as one for misdemeanor DWS, as do we.

[2] *See* ORS 813.010. Defendant was also cited, and later convicted, for the traffic violation of unlawful or unsignaled change of lane under ORS 811.375.

[3] Defendant urges that *Warner* was wrongly decided and urges us to overrule it. We decline his invitation.

of conviction was entered. The defendant then moved to dismiss the still-pending DUII charge, arguing that it was barred by the former jeopardy protection of Article I, section 12, of the Oregon Constitution because the DWS was originally charged as a misdemeanor and only later reduced to a violation. The key question, as we identified it in *Page*, was whether the defendant's prosecution for DWS was "criminal in nature" because it was charged as a misdemeanor, even though it was tried as a violation. 200 Or App at 60.

To make that determination, we applied the analysis identified in *State v. Selness/Miller*, 334 Or 515, 54 P3d 1025 (2002). That analysis required us first to consider whether the legislature intended to create a civil proceeding. We answered that question affirmatively in *Page*. 200 Or App at 61. Then, following the *Selness/Miller* analysis, we used a four-factor test to determine whether, despite the legislature's intent, the proceeding was criminal in nature. The first of those four factors was whether the charge was subject to "the use of pretrial procedures that are associated with the criminal law, such as indictment, arrest, and detention[.]" *Selness/Miller*, 334 Or at 536. On that score, we observed that the defendant's "DWS prosecution began as a prosecution for a misdemeanor, invoking all of the trappings of a criminal prosecution." *Page*, 200 Or App at 61-62. We explained:

> "A defendant charged with a misdemeanor is subject to, among other things, arrest, search incident to arrest, restraint by handcuffs, detention in jail for up to 36 hours before arraignment, and release on a bond if the defendant does not qualify for release on his own recognizance. Until the decision is made by the district attorney to treat the misdemeanor as a violation, a person in defendant's circumstances is subject to criminal pretrial procedures. The severest and most intrusive of those procedures are likely to occur in the 36-hour period after arrest, a period likely to have elapsed before a decision will be made to treat the offense as a violation."

*Id.* at 62. We concluded that the potential for those pretrial procedures to be used was a factor that cut in favor of concluding that the defendant's DWS prosecution was criminal in nature. However, it was the only factor that did cut that

way. The other factors under the *Selness/Miller* test (*i.e.*, the criminal nature of the penalty; the public stigma of conviction; and collateral consequences) all cut in the opposite direction—that is, in favor of a conclusion that the prosecution was noncriminal. *Id.* at 64. As a result, we held that the prosecution against the defendant for DWS violation "did not become criminal in nature based solely on the available pretrial procedures." *Id.*

That same analysis applies with equal force here. When defendant was cited for misdemeanor DWS, he was subject to the same pretrial procedures that we considered in *Page.* Likewise, in his prosecution for the DWS violation, the potential penalty, public stigma, and collateral consequences of defendant's conviction were the same as those we considered in *Page.*[4]

Defendant, however, argues that *Page* does not control because the defendant in that case was not in fact arrested and detained on the misdemeanor DWS charge. Here, according to defendant, he was. For present purposes, we will assume that defendant is factually correct.[5] The distinction, however, misunderstands the rationale of our decision in *Page.* We did not analyze the pretrial procedures factor based on what pretrial procedures were actually applied

---

[4] As we noted in *Page*, the statutes were amended in 2003 (effective September 1, 2003) to permit a misdemeanor-level fine to be imposed notwithstanding reduction of the offense to a violation. 200 Or App at 62 n 7 (citing ORS 161.566 (2003) and ORS 161.635(1)(a) (2003)). That change does not apply to this prosecution, just as it did not apply to the prosecution in *Page.* Our citations to ORS 161.566 therefore are to the pre-2003 version.

[5] The trial court, at a few points in the colloquy, made express findings that defendant had been arrested and detained on the DWS charge as well as the DUII charge. Defendant argues that the trial court did so based on a review of the Oregon Judicial Information Network (OJIN) report and the DWS citation. Under *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), we must defer to those findings if any evidence in the record supports them. According to the state, the record establishes that defendant was arrested only on the DUII charge and on an outstanding arrest warrant for a probation violation. The DUII citation notes that a custody report was done on the charge; the DWS citation does not have a similar notation. The custody report has a narrative prepared by the arresting officer that states, "Investigation of suspected DUII driver leads to arrest of [defendant] for DUII and Parole Violation (warrant)." The custody report also identifies the charges on which defendant was to be held as the DUII and the warrant, and includes a direction to "Mug & Print on DUII." There is no reference anywhere in the custody report to the DWS charge.

to the defendant. We analyzed, instead, the *potential* pretrial procedures for a person cited for misdemeanor DWS and the likelihood that the decision to reduce the charge to a violation would render them legally inapplicable. We concluded that a reduction of the charge was unlikely to occur during the time when "[t]he severest and most intrusive" procedures of arrest, search incident to arrest, handcuffing, and detention were possible. *Page*, 200 Or App at 62. As a result, we considered the misdemeanor charge to invoke "all of the trappings of a criminal prosecution" based on the pretrial procedures to which the defendant was legally subject, whether in fact they actually were used in the defendant's case. *Id*. at 61-62. Even so, we concluded that those pretrial procedures did not render the prosecution on the violation criminal in nature.

*Page* is directly on point and controlling. Defendant's prosecution on the DWS violation was not criminal in nature. The judgment in that case therefore does not bar his prosecution for felony DUII arising out of the same incident. Consequently, we reverse the order of dismissal and remand for further proceedings.

Reversed and remanded.

---

Beyond relying on the trial court's review of the citation and OJIN report, defendant does not identify how the record supports a conclusion that he was arrested and detained on the DWS. If the trial court's findings in that regard made a difference, we would be hard-pressed to conclude on the record before us that they are supported. But because those findings are not decisive in the analysis and do not distinguish this case from *Page*, we are willing to assume that defendant was arrested on the DWS charge *along with* the DUII charge.

We are not willing to assume, however, that defendant was incarcerated on the DWS charge for over 30 days (until his arraignment), as defendant urges. The issue of how long defendant was detained on the respective charges was not raised or discussed below. The trial court did not expressly and unequivocally find that defendant had been detained for that length of time on the DWS charge. At most, the trial court casually observed at one point that defendant was in custody until his arraignment (which was 34 days after his arrest), without distinguishing which charge or charges resulted in his custody until that time. Ultimately, the trial court's ruling was predicated only on the fact that defendant was charged with something for which he could be and was arrested ("[T]he bottom line is, he was arrested for both."). We decline to read into the court's findings an affirmative finding that defendant was in custody on the DWS charge until his arraignment 34 days later when that was not an issue below, the court did not base its ruling on that conclusion, and such a period of detention on the DWS charge before arraignment would have been unlawful. *See* ORS 135.010 (person detained on misdemeanor can be detained in jail for up to 36 hours before arraignment).