Argued and submitted December 19, 2011, reversed and remanded September 26, 2012, petition for review allowed January 29, 2013 (353 Or 203)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# TAWANNA D. FULLER,
aka Tawana Divier Fuller,
*Defendant-Appellant.*

Multnomah County Circuit Court
100748130; A147724

287 P3d 1263

Karen J. Mockrin argued the cause and filed the brief for appellant.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals a judgment convicting her of two violations, assigning error to the trial court's denial of her motion to be tried by a jury and proved guilty beyond a reasonable doubt. Defendant also assigns error to the admission of hearsay evidence. Because we reverse and remand on defendant's first assignment of error, we do not reach her second.

The facts of this case are largely procedural. Defendant was charged with two misdemeanor offenses, third-degree theft, ORS 164.043, and attempted first-degree theft, ORS 164.055; ORS 161.405, as a result of an incident in which she was accused of shoplifting.[1] Defendant was arrested on the charges and briefly incarcerated. At arraignment, the state elected to prosecute the charges as violations rather than misdemeanors. Defendant filed a motion to have the charges tried to a jury and to be proved guilty beyond a reasonable doubt, contending that she was entitled to those protections even though the state had elected to prosecute the charges as violations rather than misdemeanors. The trial court denied the motion and found defendant guilty of the charges by a preponderance of the evidence. The court imposed a $300 fine on each conviction.

Defendant appeals, contending that the trial court erred in denying her motion for a jury trial and to be proved guilty beyond a reasonable doubt. She contends that she was entitled to those protections because her prosecution and conviction of the charges retained characteristics that made the prosecution a criminal prosecution notwithstanding the treatment of the charges as violations. The state counters that a violation proceeding is not a criminal prosecution and, consequently, that defendant was not entitled to the protections that she seeks.

ORS 161.566(1) provides that the state may elect to treat most misdemeanors as Class A violations if the

---

[1] Third-degree theft is a Class C misdemeanor. ORS 164.043(2). First-degree theft is a Class C felony, ORS 164.055(3), and an attempt to commit a Class C felony is a Class A misdemeanor, ORS 161.405(2)(d). Consequently, attempted first-degree theft is a Class A misdemeanor.

state makes that election at or before the defendant's first appearance on the charge.[2] If the state elects to do that, then the charge is tried to the court without a jury and the prosecution has the burden of proving the charge by a preponderance of the evidence. ORS 153.076(1), (2). If the defendant is convicted of the violation, the court may impose a fine up to the maximum amount that it could impose for the class of misdemeanor receiving violation treatment, ORS 161.566(2)(b), which, in this case, is $6,250 for attempted first-degree theft and $1,250 for third-degree theft, ORS 161.635.[3]

The legislature may choose to devise a system to punish people for law violations by means other than criminal prosecution. However, if the alternative approach has characteristics that do not sufficiently distinguish it from a criminal prosecution, then the alternative approach will be considered to subject people to criminal prosecution and, thus, require protections that apply to criminal prosecutions, *viz.*, the right to a jury trial and proof beyond a reasonable doubt. *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 100-02, 570 P2d 52 (1977).[4]

In *Brown*, the Supreme Court identified five factors that bear on whether the prosecution of a defendant on a particular charge subjects the defendant to a criminal prosecution. Those factors are the type of offense, the nature of the prescribed penalty, the collateral consequences associated with conviction, the significance of the conviction to the community, and the pretrial practices associated with an arrest and detention for the offense. *Id.* at 102-08. The determination whether the trial court erred in denying defendant's motion to require a jury trial and proof beyond a reasonable doubt in this case turns on an assessment of those factors. *See State v. Thomas*, 99 Or App 32, 35, 780

---

[2] All misdemeanors are subject to violation treatment except those established in ORS 811.540 and ORS 813.010. *See* ORS 161.566(4).

[3] Attempted first-degree theft is a Class A misdemeanor, which is subject to a maximum fine of $6,250. ORS 161.635(1)(a). Third-degree theft, in turn, is a Class C misdemeanor, which is subject to a maximum fine of $1,250. ORS 161.635(1)(c).

[4] Article I, section 11, of the Oregon Constitution provides that a defendant has the right to a jury trial in all criminal prosecutions; the requirement that the state prove a defendant guilty beyond a reasonable doubt is implicit in criminal prosecutions. *Brown*, 280 Or at 98-99.

P2d 1197 (1989), *aff'd on other grounds*, 311 Or 182, 806 P2d 689 (1991) ("If theft III, as a violation, retains traits that characterize a criminal prosecution, then [the] defendant's rights to a jury trial and to have her guilt proven beyond a reasonable doubt cannot be abrogated[.]").

Two cases provide context for our assessment of the *Brown* factors in this case, *Thomas*, 99 Or App 32, and *State v. Rode*, 118 Or App 665, 848 P2d 1232, *rev dismissed*, 317 Or 486 (1993). Those cases suggest that changes in the statutory scheme under which a misdemeanor may be tried as a violation bear on whether the prosecution of a defendant on a particular charge subjects the defendant to a criminal prosecution. As we will explain, the statutory scheme for violations has changed since we decided *Rode*, and those changes bear on our assessment of the *Brown* factors in this case.

In *Thomas*, we applied the *Brown* factors to a trial court's amendment of a complaint that converted a third-degree theft charge from a misdemeanor to a violation.[5] We concluded that, despite the legislature's decision to authorize trial courts to try misdemeanors as violations, prosecuting third-degree theft as a violation did not cause the charge to "lose the traits that characterize a criminal prosecution." 99 Or App at 36. We were particularly influenced by the nature of the offense and its significance to the community, noting that theft has been recognized as a crime since early history and that "[o]ur culture has always viewed theft as a crime and continues to do so." *Id.* We concluded that "it would be difficult for our society to discriminate between the significance of a conviction for theft [as] a misdemeanor, with its attendant criminal connotations, and a conviction for decriminalized theft [as] a violation." *Id.* Consequently, we reversed and remanded for the violation to be tried to a jury pursuant to an evidentiary standard of proof beyond a reasonable doubt.

---

[5] *Former* ORS 161.565(2) (1987), which was repealed by Oregon Laws 1999, chapter 1051, section 49, gave a trial court authority to treat a misdemeanor, other than a misdemeanor in the Oregon Vehicle Code, as a violation if, before the defendant pleaded to the charge, the court declared that it intended do that and the state did not object. If the court did not decide to treat the misdemeanor as a violation or if the state objected, then the charge was tried as a misdemeanor.

After *Thomas,* the legislature amended *former* ORS 161.565(2) to provide that, except for the misdemeanors established in ORS 811.540 or ORS 813.010, all misdemeanors would be prosecuted as violations *unless* the state indicated on the record its intention to prosecute them as misdemeanors. Or Laws 1989, ch 1053, § 17. Thus, the default principle became one in which most misdemeanors would be prosecuted as violations.

Under that version of *former* ORS 161.565, we revisited in *Rode* the application of the *Brown* factors to the charges in that case, *viz.,* attempted assault in the fourth degree and harassment. The defendant sought in *Rode* to have the charges tried to a jury, but the trial court denied the request and convicted him of the charges. The defendant appealed, contending that, pursuant to *Brown,* he had been denied his constitutional right to a jury trial.

We rejected the defendant's claim, emphasizing that the legislature's amendment of *former* ORS 161.565 had created a system under which the default principle was that misdemeanors would be tried as violations. Although we did not explicitly frame our analysis in terms of the *Brown* factors, our reasoning addressed some of them, specifically the nature of the penalty and the significance of a conviction to the community.

We concluded that the penalty factor weighed against concluding that the defendant had been subjected to a criminal prosecution, explaining that the legislature had chosen not to retain criminal punishments for misdemeanors charged as violations, specifically noting that the penalty for violation convictions was a maximum fine of $250. 118 Or App at 669. We also concluded that the significance to the community of violation convictions for assaultive conduct did not support treating the convictions as criminal. We reasoned that, through the enactment of the 1989 version of *former* ORS 161.565(2), the legislature had "determined that misdemeanors no longer represent anti-social behavior serious enough to warrant criminal prosecution in the absence of a district attorney's affirmative decision otherwise." 118 Or App at 670. Consequently, we concluded that the prosecution of the defendant's conduct

was sufficiently distinguishable from a criminal prosecution that he did not have a right to a jury trial.

As noted, the legislature has amended the relevant statutory scheme since *Rode* by repealing *former* ORS 161.565 and enacting ORS 161.566 in its stead. *See* Or Laws 1999, ch 1051, §§ 47, 49. The effect of the change is to return to the default principle that applied when we decided *Thomas, viz.*, to a principle in which misdemeanors are tried as misdemeanors rather than violations unless the state elects otherwise. Hence, the basis for our conclusion in *Rode* that the legislature had determined that misdemeanor offenses do not constitute antisocial behavior serious enough to warrant criminal prosecution no longer applies.

With that understanding of ORS 161.566, we turn to whether, under the *Brown* factors, defendant's prosecution and conviction for third-degree theft and attempted first-degree theft retain sufficient characteristics of a criminal prosecution to require their prosecution to be subject to the requirements that apply to a criminal prosecution, *viz.*, trial by jury and proof beyond a reasonable doubt.

The type of offense and its significance to the community can be assessed together. The former factor weighs in favor of treating the prosecution and conviction of an offense as a criminal prosecution if the offense was a crime at common law or when the Oregon Constitution was adopted or if it involves traditional *mens rea* elements. *Brown*, 280 Or at 102. The latter factor depends on the stigma that our society places on a conviction for the offense. *Thomas*, 99 Or App at 36.

Our society has long considered theft to be a crime. The "prohibition against theft * * * predates our constitutions and the common law," and a conviction for theft "has always required proof of *'mens rea.'" Id.* at 35. Those features weigh in favor of treating the prosecution and conviction of defendant for the theft offenses as criminal prosecutions. Furthermore, we adhere to our conclusion in *Thomas* that, because our society has always viewed theft as a crime, "it would be difficult for [members of the general public] to discriminate between the significance of a conviction

for theft [as] a misdemeanor, with its attendant criminal connotations, and a conviction for decriminalized theft [as] a violation." *Id.* at 36. Hence, that too weighs in favor of treating the prosecution and conviction of defendant for the theft offenses as criminal prosecutions.

The penalty factor focuses on the penalty to which the defendant is exposed by prosecution for the offense. *State v. Page*, 200 Or App 55, 62, 113 P3d 447, *rev den*, 339 Or 450 (2005). Pursuant to ORS 161.566(2)(b), a defendant convicted of a misdemeanor that is prosecuted as a violation is subject to the same fine as that to which the defendant would have been subject had the state prosecuted the offense as a misdemeanor.

The legislature's express correlation of the monetary penalties for conviction of a misdemeanor and conviction of a misdemeanor prosecuted as a violation is significant. Although imprisonment is a severe consequence, the freedom from which distinguishes a violation conviction from a misdemeanor conviction, "a large fine may be * * * so strikingly severe as to carry the same punitive significance" as imprisonment. *Brown*, 280 Or at 103-04. In *Brown*, which was decided in 1977, the court explained that a $1,000 fine "is strong evidence of the punitive significance that the legislature meant to give" to the punishment for the offense. *Id.* at 105. Although inflation has diminished the punitive significance of the $1,000 fine at issue in *Brown*, the $6,250 maximum fine for a conviction of a violation for attempted first-degree theft is severe enough to have punitive significance comparable to that of imprisonment. In contrast, the $1,250 maximum fine for conviction of a third-degree theft violation, considered in light of inflation, is not "so strikingly severe as to carry the same punitive significance" as imprisonment. Hence, the penalty factor weighs in favor of treating the prosecution of attempted first-degree theft, but not third-degree theft, as criminal.

As to the collateral consequences of the violation convictions, defendant concedes that a violation conviction for theft does not cause any collateral consequences that are indicative of criminal prosecution. We need not resolve whether defendant is correct to concede the point because

we conclude that the other *Brown* factors are determinative in this case.

Finally, the pretrial practices associated with arrest and detention for theft, whether the offense is prosecuted as a misdemeanor or as a violation, are the same. Every prosecution of an offense as a violation under ORS 161.566 begins as a prosecution for a misdemeanor and, thereby, invokes "all the trappings of a criminal prosecution." *Page*, 200 Or App at 61-62.

> "A defendant charged with a misdemeanor is subject to, among other things, arrest, search incident to arrest, restraint by handcuffs, detention in jail for up to 36 hours before arraignment, and release on a bond if the defendant does not qualify for release on his own recognizance. Until the decision is made by the district attorney to treat the misdemeanor as a violation, a person in [the] defendant's circumstances is subject to criminal pretrial procedures."

*Id.* at 62. Because defendant was subjected to criminal procedures up to arraignment, when the state decided to prosecute the offenses as violations, we conclude that the pretrial procedures weigh in favor of treating the prosecution and conviction of defendant of the theft offenses as criminal prosecutions.

In light of the legislature's decision to reverse the default principle for the prosecution of misdemeanors, *viz.*, to prosecute them as misdemeanors rather than violations unless the state elects otherwise, and the effect of that decision on our assessment of the *Brown* factors, we conclude that prosecuting and convicting defendant of third-degree theft and attempted first-degree theft as violations pursuant to ORS 161.566 retains too many characteristics of a criminal prosecution to deny defendant the protections of a jury trial and an evidentiary standard of proof of the offenses beyond a reasonable doubt. It follows that the trial court erred in denying defendant's motion.

Reversed and remanded.